ZWICKLER *v.* KOOTA, DISTRICT ATTORNEY OF
KINGS COUNTY.

No. 29.  Argued October 12, 1967.—Decided December 5, 1967.

*Emanuel Redfield* argued the cause and filed a brief for appellant.

*Samuel A. Hirshowitz,* First Assistant Attorney General of New York, argued the cause for appellee. With him on the brief were *Louis J. Lefkowitz,* Attorney General, and *Irving L. Rollins, George D. Zuckerman* and *Brenda Soloff,* Assistant Attorneys General.

*Jack Greenberg, Melvyn Zarr* and *Anthony G. Amsterdam* filed a brief for the NAACP Legal Defense and Educational Fund, Inc., as *amicus curiae,* urging reversal.

*Harry Brodbar* and *Raymond J. Scanlan* filed a brief for the National District Attorneys Association, as *amicus curiae,* urging affirmance.

MR. JUSTICE BRENNAN delivered the opinion of the Court.

Section 781–b of the New York Penal Law makes it a crime to distribute in quantity, among other things, any handbill for another which contains any statement concerning any candidate in connection with any election of public officers, without also printing thereon the name and post office address of the printer thereof and of the person at whose instance such handbill is so distributed.[1]

---

[1] N. Y. Penal Law § 781–b (now superseded in identical language by N. Y. Election Law § 457, see Laws 1965, c. 1031, at 1782–1783):

"No person shall print, publish, reproduce or distribute in quantity, nor order to be printed, published, reproduced or distributed

Appellant was convicted of violating the statute by distributing anonymous handbills critical of the record of a United States Congressman seeking re-election at the 1964 elections. The conviction was reversed, on state law grounds, by the New York Supreme Court, Appellate Term,[2] and the New York Court of Appeals affirmed

by any method any handbill, pamphlet, circular, post card, placard or letter for another, which contains any statement, notice, information, allegation or other material concerning any political party, candidate, committee, person, proposition or amendment to the state constitution, whether in favor of or against a political party, candidate, committee, person, proposition or amendment to the state constitution, in connection with any election of public officers, party officials, candidates for nomination for public office, party position, proposition or amendment to the state constitution without also printing or reproducing thereon legibly and in the English language the name and post-office address of the printer thereof and of the person or committee at whose instance or request such handbill, pamphlet, circular, post card, placard or letter is so printed, published, reproduced or distributed, and of the person who ordered such printing, publishing, reproduction or distribution, and no person nor committee shall so print, publish, reproduce or distribute or order to be printed, published, reproduced or distributed any such handbill, pamphlet, circular, post card, placard or letter without also printing, publishing, or reproducing his or its name and post-office address thereon. A violation of the provisions of this section shall constitute a misdemeanor.

"The term 'printer' as used in this section means the principal who or which by independent contractual relationship is responsible directly to the person or committee at whose instance or request a handbill, pamphlet, circular, post card, placard or letter is printed, published, reproduced or distributed by such principal, and does not include a person working for or employed by such a principal."

[2] "In our opinion, the People failed to establish that defendant distributed anonymous literature 'in quantity' in violation of the provisions of Section 781 (b) [sic] of the Penal Law. We do not reach the question of the constitutionality of the statute involved." *People* v. *Zwickler,* Sup. Ct., App. Term, Kings County, April 23, 1965 (unreported), as quoted in *Zwickler* v. *Koota,* 261 F. Supp. 985, 987.

without opinion, 16 N. Y. 2d 1069, 266 N. Y. S. 2d 140, 213 N. E. 2d 467. Thereafter appellant, invoking the District Court's jurisdiction under the Civil Rights Act, 28 U. S. C. § 1343, and the Declaratory Judgment Act, 28 U. S. C. § 2201,[3] sought declaratory and injunctive relief in the District Court for the Eastern District of New York on the ground that, on its face, the statute was repugnant to the guarantees of free expression secured by the Federal Constitution. His contention, below and in this Court, is that the statute suffers from impermissible "overbreadth" in that its sweep embraces anonymous handbills both within and outside the protection of the First Amendment. Cf. *Talley* v. *California,* 362 U. S. 60. A three-judge court, one judge dissenting, applied the doctrine of abstention and dismissed the complaint,[4] remitting appellant to the New York courts

---

[3] Appellee questions the statement of the majority below that "[t]he complaint . . . alleges a case or controversy which is within the adjudicatory power of this court. Douglas v. City of Jeannette, 319 U. S. 157, 162." 261 F. Supp., at 989. Notwithstanding this statement, we are not persuaded, in light of its decision to abstain, that the majority below considered the prerequisites to a declaratory judgment or that these issues were in fact adjudicated. "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co.* v. *Pacific Coal & Oil Co.,* 312 U. S. 270, 273. It will be for the District Court on the remand to decide whether appellant's allegations entitle him to a declaratory judgment on the constitutional question.

[4] It is better practice, in a case raising a federal constitutional or statutory claim, to retain jurisdiction, rather than to dismiss, see Note, Federal-Question Abstention: Justice Frankfurter's Doctrine in an Activist Era, 80 Harv. L. Rev. 604 (1967), but other courts have also ordered dismissal. Compare *Government & Civic Employees Organizing Committee, CIO* v. *Windsor,* 353 U. S. 364; *Shipman* v. *DuPre,* 339 U. S. 321, with *Stainback* v. *Mo Hock Ke Lok Po,* 336 U. S. 368; *Local 333B, United Marine Div., Int'l Long-*

to assert his constitutional challenge in defense of any criminal prosecution for any future violations of the statute or, short of this, to the institution of "an action in the state court for a declaratory judgment." [5]  261 F. Supp. 985, 993.  Because appellant's appeal presents an important question of the scope of the discretion of the district courts to abstain from deciding the merits of a challenge that a state statute on its face violates the Federal Constitution, we noted probable jurisdiction. 386 U. S. 906.  We reverse.

We shall consider *first* whether abstention from the declaratory judgment sought by appellant would have been appropriate in the absence of his request for injunctive relief, and *second,* if not, whether abstention was nevertheless justified because appellant also sought an injunction against future criminal prosecutions for violation of § 781–b.

## I.

During most of the Nation's first century, Congress relied on the state courts to vindicate essential rights arising under the Constitution and federal laws.  The only exception was the 25th section of the Judiciary Act of 1789, 1 Stat. 85, providing for review in this Court when a claim of federal right was denied by a state court.[6]

---

*shoremen's Assn.* v. *Battle,* 101 F. Supp. 650 (D. C. E. D. Va.), aff'd *per curiam,* 342 U. S. 880.  See generally Note, Judicial Abstention From the Exercise of Federal Jurisdiction, 59 Col. L. Rev. 749, 772–774 (1959).

[5] New York provides a Declaratory Judgment remedy, N. Y. Civ. Prac. § 3001.  See *De Veau* v. *Braisted,* 5 App. Div. 2d 603, 174 N. Y. S. 2d 596 (2d Dept.), aff'd, 5 N. Y. 2d  236, 183 N. Y. S. 2d 793, 157 N. E. 2d 165, aff'd, 363 U. S. 144.

[6] Thus Congress did not exercise the grant under Art. III, § 2, cl. 1, of the Constitution: "The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority . . . ."  Original "arising under" juris-

246

But that policy was completely altered after the Civil War when nationalism dominated political thought [7] and brought with it congressional investiture of the federal judiciary with enormously increased powers. The Act of March 3, 1875,[8] was the principal ". . . measure of the

diction was vested in the federal courts by § 11 of the Act of February 13, 1801, c. 4, 2 Stat. 92, but it was repealed only a year later by § 1 of the Act of March 8, 1802, c. 8, 2 Stat. 132. An earlier version of the Judiciary Act of 1789, which died in committee, provided for jurisdiction in the federal courts " 'of all cases of federal jurisdiction, whether in law or equity above the value of five hundred dollars'. . . ." Warren, New Light on the History of the Federal Judiciary Act of 1789, 37 Harv. L. Rev. 49, 61 (1923). See generally Frankfurter & Landis, The Business of the Supreme Court: A Study in the Federal Judicial System, c. 1.

[7] "The history of the federal courts is woven into the history of the times. The factors in our national life which came in with reconstruction are the same factors which increased the business of the federal courts, enlarged their jurisdiction, modified and expanded their structure." Frankfurter & Landis, supra, at 59; see also Frankfurter, Distribution of Judicial Power Between United States and State Courts, 13 Cornell L. Q. 499, 507–511 (1928).

[8] The statute granted the district courts "original cognizance, concurrent with the courts of the several States, of all suits of a civil nature at common law or in equity, where the matter in dispute exceeds, exclusive of costs, the sum or value of five hundred dollars, and arising under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority . . . ." Act of March 3, 1875, § 1, 18 Stat. 470. See generally Hart & Wechsler, The Federal Courts and the Federal System 727–733; Wright, Federal Courts § 17; Chadbourn & Levin, Original Jurisdiction of Federal Questions, 90 U. Pa. L. Rev. 639 (1942); Forrester, Federal Question Jurisdiction and Section 5, 18 Tulane L. Rev. 263 (1943); Forrester, The Nature of a "Federal Question," 16 Tulane L. Rev. 362 (1942); Mishkin, The Federal "Question" in the District Courts, 53 Col. L. Rev. 157 (1953).

"This development in the federal judiciary, which in the retrospect seems revolutionary, received hardly a contemporary comment." Frankfurter & Landis, supra, at 65. While there is practically no legislative history of the Act, see id., at 65–69, for a summary of what history is available, commentators are generally

broadening federal domain in the area of individual rights," *McNeese* v. *Board of Education*, 373 U. S. 668, 673. By that statute ". . . Congress gave the federal courts the vast range of power which had lain dormant in the Constitution since 1789. These courts ceased to be restricted tribunals of fair dealing between citizens of different states and became the *primary* and powerful reliances for vindicating every right given by the Constitution, the laws, and treaties of the Untied States." (Emphasis added.) Frankfurter & Landis, The Business of the Supreme Court: A Study in the Federal Judicial System 65. Indeed, even before the 1875 Act, Congress, in the Civil Rights Act of 1871,[9] subjected to suit, "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights . . . secured by the Constitution and laws . . . ," 42 U. S. C. § 1983; and gave the district courts "original jurisdiction" of actions "[t]o redress the deprivation, under color of any State law . . . of any right . . . secured by the Constitution . . . ." 28 U. S. C. § 1343 (3).

---

agreed that a broad grant of jurisdiction was intended. See, *e. g.,* Forrester, The Nature of a "Federal Question," 16 Tulane L. Rev. 362, 374–385 (1942); Mishkin, The Federal "Question" in the District Courts, 53 Col. L. Rev. 157, 160 (1953). This is not to say that this Court has read the congressional grant of power in the Act of 1875 as equated with the potential for federal jurisdiction found in Article III of the Constitution. See, *e. g., National Mut. Ins. Co.* v. *Tidewater Transfer Co.,* 337 U. S. 582, 613–615 (opinion of Rutledge, J.); *Shoshone Mining Co.* v. *Rutter,* 177 U. S. 505.

[9] Five Civil Rights Acts were passed between 1866 and 1875. See 14 Stat. 27 (1866), 16 Stat. 140 (1870), 16 Stat. 433 (1871), 17 Stat. 13 (1871), 18 Stat. 335 (1875). Only § 1 of the Act of April 20, 1871, 17 Stat. 13, presently codified as 42 U. S. C. § 1983, achieved measurable success in later years. See generally Note, The Civil Rights Act of 1871: Continuing Vitality, 40 Notre Dame Law. 70 (1964).

In thus expanding federal judicial power, Congress imposed the duty upon all levels of the federal judiciary to give due respect to a suitor's choice of a federal forum for the hearing and decision of his federal constitutional claims. Plainly, escape from that duty is not permissible merely because state courts also have the solemn responsibility, equally with the federal courts, ". . . to guard, enforce, and protect every right granted or secured by the Constitution of the United States . . . ," *Robb* v. *Connolly,* 111 U. S. 624, 637. "We yet like to believe that wherever the Federal courts sit, human rights under the Federal Constitution are always a proper subject for adjudication, and that we have not the right to decline the exercise of that jurisdiction simply because the rights asserted may be adjudicated in some other forum." *Stapleton* v. *Mitchell,* 60 F. Supp. 51, 55; see *McNeese* v. *Board of Education,* 373 U. S., at 674, n. 6. Cf. *Cohens* v. *Virginia,* 6 Wheat. 264, 404. The judge-made doctrine of abstention, first fashioned in 1941 in *Railroad Commission* v. *Pullman Co.,* 312 U. S. 496, sanctions such escape only in narrowly limited "special circumstances." *Propper* v. *Clark,* 337 U. S. 472, 492.[10] One of the "special circumstances"—that

[10] See, *e. g., City of Meridian* v. *Southern Bell Tel. & Tel. Co.,* 358 U. S. 639; *Government & Civic Employees Organizing Committee, CIO* v. *Windsor,* 353 U. S. 364; *Leiter Minerals, Inc.* v. *United States,* 352 U. S. 220; *Albertson* v. *Millard,* 345 U. S. 242; *Shipman* v. *DuPre,* 339 U. S. 321; *Stainback* v. *Mo Hock Ke Lok Po,* 336 U. S. 368; *American Federation of Labor* v. *Watson,* 327 U. S. 582; *Alabama State Federation of Labor* v. *McAdory,* 325 U. S. 450; *Spector Motor Service, Inc.* v. *McLaughlin,* 323 U. S. 101; *Chicago* v. *Fieldcrest Dairies, Inc.,* 316 U. S. 168. See ,generally Wright, The Abstention Doctrine Reconsidered, 37 Tex. L. Rev. 815 (1959); Note, Judicial Abstention From the Exercise of Federal Jurisdiction, 59 Col. L. Rev. 749 (1959); Note, Federal-Question Abstention: Justice Frankfurter's Doctrine in an Activist Era, 80 Harv. L. Rev. 604 (1967); Note, Doctrine of Abstention: Need of Reappraisal, 40 Notre Dame Law. 101 (1964). Even

thought by the District Court to be present in this case—is the susceptibility of a state statute of a construction by the state courts that would avoid or modify the constitutional question. *Harrison* v. *NAACP,* 360 U. S. 167. Compare *Baggett* v. *Bullitt,* 377 U. S. 360.[11]

But we have here no question of a construction of § 781–b that would "avoid or modify the constitutional question." Appellant's challenge is not that the statute is void for "vagueness," that is, that it is a statute "which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application . . . ." *Connally* v. *General Construction Co.,* 269 U. S. 385, 391.[12] Rather his constitutional

---

when parties are sent to state court for clarification of state law, the federal question may be reserved for decision by the district court. *England* v. *Louisiana State Board of Medical Examiners,* 375 U. S. 411.

[11] Other "special circumstances" have been found in diversity cases, see, *e. g., Clay* v. *Sun Insurance Ltd.,* 363 U. S. 207; *Louisiana Power & Light Co.* v. *City of Thibodaux,* 360 U. S. 25; *Meredith* v. *Winter Haven,* 320 U. S. 228; but see *County of Allegheny* v. *Frank Mashuda Co.,* 360 U. S. 185; cf. Note, Abstention and Certification in Diversity Suits: "Perfection of Means and Confusion of Goals," 73 Yale L. J. 850, and cases cited therein; and in cases involving possible disruption of complex state administrative processes, see, *e. g., Alabama Public Serv. Comm'n* v. *Southern R. Co.,* 341 U. S. 341; *Burford* v. *Sun Oil Co.,* 319 U. S. 315; cf. *County of Allegheny* v. *Frank Mashuda Co.,* 360 U. S. 185; *Louisiana Power & Light Co.* v. *City of Thibodaux,* 360 U. S. 25. See generally Wright, Federal Courts § 52; Note, 59 Col. L. Rev., *supra,* at 757–762.

[12] A lower court held "void for indefiniteness" a predecessor statute of § 781–b. *People* v. *Clampitt,* 34 Misc. 2d 766, 222 N. Y. S. 2d 23 (Ct. Spec. Sess., N. Y. City, 1961). Thereupon the legislature amended the statute to its present form, providing that an offense could not be made out under it until whatever literature might be "printed'" or "reproduced" might also be "distributed." The constitutionality of the amended statute has not been determined in the New York courts.

attack is that the statute, although lacking neither clarity nor precision, is void for "overbreadth," that is, that it offends the constitutional principle that "a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." *NAACP* v. *Alabama,* 377 U. S. 288, 307. See *Aptheker* v. *Secretary of State,* 378 U. S. 500, 508–509; *NAACP* v. *Button,* 371 U. S. 415, 438; *Louisiana ex rel. Gremillion* v. *NAACP,* 366 U. S. 293; *Shelton* v. *Tucker,* 364 U. S. 479, 488; *Schware* v. *Board of Bar Examiners,* 353 U. S. 232, 246; *Martin* v. *City of Struthers,* 319 U. S. 141, 146–149; *Cantwell* v. *Connecticut,* 310 U. S. 296, 304–307; *Schneider* v. *State,* 308 U. S. 147, 161, 165.[13] Appellee does not contest appellant's suggestion that § 781–b is both clear and precise; indeed, appellee concedes that state court construction cannot narrow its allegedly indiscriminate cast and render unnecessary a decision of appellant's constitutional challenge. See *Aptheker* v. *Secretary of State,* 378 U. S. 500.

The analysis in *United States* v. *Livingston,* 179 F. Supp. 9, 12–13, aff'd, *Livingston* v. *United States,* 364 U. S. 281, is the guide to decision here:

"Regard for the interest and sovereignty of the state and reluctance needlessly to adjudicate constitutional issues may require a federal District Court to abstain from adjudication if the parties may avail themselves of an appropriate procedure to obtain state interpretation of state laws requiring construction. Harrison v. N. A. A. C. P., 360 U. S. 167. The decision in Harrison, however, is not a broad encyclical commanding automatic remission to the state

---

[13] For the different constitutional considerations involved in attacks for "vagueness" and for "overbreadth" see *Keyishian* v. *Board of Regents,* 385 U. S. 589, 603–604, 608–610.

courts of all federal constitutional questions arising in the application of state statutes. N. A. A. C. P. v. Bennett, 360 U. S. 471. Though never interpreted by a state court, if a state statute is not fairly subject to an interpretation which will avoid or modify the federal constitutional question, it is the duty of a federal court to decide the federal question when presented to it. Any other course would impose expense and long delay upon the litigants without hope of its bearing fruit."

In *Turner* v. *City of Memphis,* 369 U. S. 350 (*per curiam*), we vacated an abstention order which had been granted on the sole ground that a declaratory judgment action ought to have been brought in the state court before the federal court was called upon to consider the constitutionality of a statute alleged to be violative of the Fourteenth Amendment. In *McNeese* v. *Board of Education,* 373 U. S. 668, we again emphasized that abstention cannot be ordered simply to give state courts the first opportunity to vindicate the federal claim.[14] After examining the purposes of the Civil Rights Act, under which that action was brought, we concluded that "[w]e would defeat those purposes if we held that assertion of a federal claim in a federal court must await an attempt to vindicate the same claim in a state court." 373 U. S., at 672. For the "recognition of the role of

---

[14] We have frequently emphasized that abstention is not to be ordered unless the state statute is of an uncertain nature, and is obviously susceptible of a limiting construction. *Harman* v. *Forssenius,* 380 U. S. 528, 534; *Davis* v. *Mann,* 377 U. S. 678, 690; *Baggett* v. *Bullitt,* 377 U. S. 360, 375–379; *England* v. *Louisiana State Board of Medical Examiners,* 375 U. S. 411, 415–416; *McNeese* v. *Board of Education,* 373 U. S. 668, 673, 674; *NAACP* v. *Bennett,* 360 U. S. 471; *City of Chicago* v. *Atchison, T. & S. F. R. Co.,* 357 U. S. 77, 84; *Spector Motor Service, Inc.* v. *McLaughlin,* 323 U. S. 101, 105; Note, 80 Harv. L. Rev., *supra,* at 605; Note, 40 Notre Dame Law., *supra,* n. 10, at 102.

state courts as the final expositors of state law implies no disregard for the primacy of the federal judiciary in deciding questions of federal law." *England* v. *Louisiana State Board of Medical Examiners,* 375 U. S. 411, 415–416.

These principles have particular significance when, as in this case, the attack upon the statute on its face is for repugnancy to the First Amendment. In such case to force the plaintiff who has commenced a federal action to suffer the delay of state court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect. See *Dombrowski* v. *Pfister,* 380 U. S. 479, 486–487; *Baggett* v. *Bullitt, supra,* at 378–379; *NAACP* v. *Button, supra,* at 433; cf. *Garrison* v. *Louisiana,* 379 U. S. 64, 74–75; *Smith* v. *California,* 361 U. S. 147.

It follows that unless appellant's addition of a prayer for injunctive relief supplies one, no "special circumstance" prerequisite to application of the doctrine of abstention is present here, *Baggett* v. *Bullitt,* 377 U. S. 360, 375–379, and it was error to refuse to pass on appellant's claim for a declaratory judgment.[15]

## II.

In support of his prayer for an injunction against further prosecutions for violation of § 781–b, appellant's amended complaint alleges that he desires to continue to distribute anonymous handbills in quantity "in connection with any election of party officials, nomination for public office and party position that may occur subsequent to said election campaign of 1966." [16] He further

---

[15] Of course appellant must establish the elements governing the issuance of a declaratory judgment. See n. 3, *supra.*

[16] Appellant urges that these allegations refute appellee's suggestion in his Motion to Dismiss that "[s]ince the political literature appellant intended to distribute all related to the 1966 congressional

alleges that "[b]ecause of the previous prosecution of plaintiff for making the distribution of the leaflet . . . plaintiff is in fear of exercising his right to make distribution as aforesaid and is in danger of again being prosecuted therefor, unless his right of expression is declared by this court, without submitting himself to the penalties of the statute."

The majority below was of the view that, in light of this prayer, abstention from deciding the declaratory judgment issue was justified because appellant had made no showing of "special circumstances" entitling him to an injunction against criminal prosecution. Appellee supports this holding by reliance upon the maxim that a federal district court should be slow to act "where its powers are invoked to interfere by injunction with threatened criminal prosecutions in a state court." *Douglas* v. *City of Jeannette,* 319 U. S. 157, 162. We have recently recognized the continuing validity of that pronouncement. *Dombrowski* v. *Pfister,* 380 U. S. 479, 483–485. However, appellant here did not, as did the plaintiffs in *Douglas,* 319 U. S., at 159, seek solely to "restrain threatened criminal prosecution of [him] in the state courts . . . ." Rather, he also requested a declaratory judgment that the state statute underlying the apprehended criminal prosecution was unconstitutional.

The majority below, although recognizing that *Douglas* might be inapposite to this case, 261 F. Supp., at 990, read *Dombrowski* v. *Pfister* as requiring abstention from considering appellant's request for a declaratory judgment in the absence of a showing by appellant of "spe-

candidacy of Abraham Multer . . . , this matter now might be properly dismissed for mootness." This dispute will be part of the issues to be decided by the District Court on the remand. See n. 3, *supra.* Multer has since been elected to the Supreme Court of New York and will take office on January 1, 1968. New York Times, p. 31, col. 2, November 8, 1967.

cial circumstances to justify the exercise of federal court jurisdiction . . ." to grant injunctive relief. 261 F. Supp., at 991. Since the majority found no "special circumstances" justifying that relief, the majority concluded that it was also required to abstain from considering the request for declaratory relief.

This conclusion was error. *Dombrowski* teaches that the questions of abstention and of injunctive relief are not the same.[17] The question of the propriety of the action of the District Court in abstaining was discussed as an independent issue governed by different considerations. We squarely held that "the abstention doctrine is inappropriate for cases such as the present one where . . . statutes are justifiably attacked on their face as abridging free expression . . . ." 380 U. S., at 489–490. This view was reaffirmed in *Keyishian* v. *Board of Regents,* 385 U. S. 589, 601, n. 9, when a statute was attacked as unconstitutional on its face and we said, citing *Dombrowski* and *Baggett* v. *Bullitt, supra,* "[t]his is not a case where abstention pending state court interpretation would be appropriate . . . ."

It follows that the District Court's views on the question of injunctive relief are irrelevant to the question of abstention here. For a request for a declaratory judgment that a state statute is overbroad on its face must be considered independently of any request for injunctive relief against the enforcement of that statute. We hold that a federal district court has the duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of the injunction. *Douglas* v. *City of Jeannette, supra,* is not contrary. That case involved only the request for injunctive relief. The Court re-

---

[17] Our discussion of the issue of injunctive relief in *Dombrowski* is at 380 U. S., at 483–489, and our discussion of the issue of abstention is at 489–492.

fused to enjoin prosecution under an ordinance declared unconstitutional the same day in *Murdock* v. *Pennsylvania*, 319 U. S. 105. Comity between the federal and Pennsylvania courts was deemed sufficient reason to justify the holding that "in view of the decision rendered today in *Murdock* . . . we find no ground for supposing that the intervention of a federal court, in order to secure petitioners' constitutional rights, will be either necessary or appropriate." 319 U. S., at 165. It will be the task of the District Court on the remand to decide whether an injunction will be "necessary or appropriate" should appellant's prayer for declaratory relief prevail. We express no view whatever with respect to the appropriateness of declaratory relief in the circumstances of this case or the constitutional validity of the law.

The judgment of the District Court is reversed and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

Mr. Justice Harlan, concurring in the judgment.

I agree that, in the circumstances of this case, the District Court should not have declined to adjudicate appellant's constitutional claims. I am, however, constrained by my uncertainty as to the implications of certain portions of the Court's opinion to state my views separately.

This Court has repeatedly indicated that "abstention" is appropriate "where the order to the parties to repair to the state court would clearly serve one of two important countervailing interests: either the avoidance of a premature and perhaps unnecessary decision of a serious federal constitutional question, or the avoidance of the hazard of unsettling some delicate balance in the area of federal-state relationships." *Louisiana Power & Light Co.* v. *City of Thibodaux*, 360 U. S. 25, 32 (dissenting

256

opinion). See generally *Harrison* v. *NAACP,* 360 U. S. 167; *County of Allegheny* v. *Frank Mashuda Co.,* 360 U. S. 185, 188–189. The first of these interests has been found in cases in which the federal constitutional issue might be mooted or "presented in a different posture"[1] by a state court determination of pertinent state law. See, *e. g., Chicago* v. *Fieldcrest Dairies, Inc.,* 316 U. S. 168; *Spector Motor Service, Inc.* v. *McLaughlin,* 323 U. S. 101; *Alabama State Federation of Labor* v. *McAdory,* 325 U. S. 450. The second of these interests has been found, for example, in situations in which the exercise of jurisdiction by a federal court would disrupt a state administrative process, *Burford* v. *Sun Oil Co.,* 319 U. S. 315; interfere with the collection of state taxes, *Toomer* v. *Witsell,* 334 U. S. 385, 392; or otherwise create "needless friction" between the enforcement of state and federal policies. *Louisiana Power & Light Co.* v. *City of Thibodaux, supra,* at 33. See also *Harrison* v. *NAACP, supra.*

I agree that the present situation is within none of these categories, and that the District Court should therefore not have dismissed, but proceeded to judgment on the issues in the case.[2] In particular, I can find in this statute no room for a state construction which might obviate the need for a decision on the constitutional

---

[1] *County of Allegheny* v. *Frank Mashuda Co., supra,* at 189.

[2] Unlike the Court, I obtain no assistance for this conclusion from the ubiquitous and slippery "chilling effect" doctrine. Appellant might have sought in the state courts the declaratory relief he now asks. N. Y. Civ. Prac. § 3001. Given the state courts' disposition of appellant's earlier prosecution, he can scarcely maintain that those courts would not promptly provide any relief to which he is entitled. Absent such allegations, it is difficult to see how that doctrine can have the slightest relevance. See *Dombrowski* v. *Pfister,* 380 U. S. 479, 499 (dissenting opinion). In these circumstances, to apply the amorphous chilling-effect doctrine would serve only to chill the interests sought to be maintained by abstention.

issue. If, however, the opinion of the Court is intended to suggest that the central, or even a principal, issue in deciding the propriety of abstention is whether the complaint has alleged "overbreadth," or only "vagueness," with respect to the New York statute in question, I cannot agree. My reasons are three. *First,* neither principle has ever been definitively delimited by this Court; a doctrine built upon their supposed differences would be likely to founder for lack of a foundation. See generally, Note, The Void-for-Vagueness Doctrine in the Supreme Court, 109 U. Pa. L. Rev. 67. *Second,* there is no reason to suppose that a case involving allegations of overbreadth would inevitably be inappropriate for abstention; the federal court might nonetheless reasonably consider that its exercise of jurisdiction would create "needless friction" with state officials, *Louisiana Power & Light Co.* v. *City of Thibodaux, supra,* at 33; or it might reasonably conclude that a state court determination would present the federal issues "in a different posture." *County of Allegheny* v. *Frank Mashuda Co., supra,* at 189. *Third,* such a standard might in effect reduce the abstention doctrine to a pleader's option; the fundamental interests served by the doctrine would be jettisoned whenever a complainant had sufficient foresight to insert into his pleading an allegation of overbreadth. I can see no proper alternative to a careful examination, in light of the interests served by abstention, of the circumstances of each case.

I agree with the Court, substantially for the reasons given in its opinion, that whether or not injunctive relief might ultimately prove appropriate in this instance is not a pertinent question at this stage of the matter.

I accordingly concur in the judgment of the Court, but in doing so wish to emphasize that, like the Court, I intimate no view whatever upon the merits of the constitutional challenge to this statute.