Selena **BURTON** and Betty Wilson

v.

**CITY OF ST. LOUIS**, a Municipal Corporation, Alphonso J. Cerventes, Mayor of the City of St. Louis, Curtis Brostron, Chief of Police, City of St. Louis, Gary M. Gaertner, City Counselor, City of St. Louis

**and**

**I. A. Long, Clifton W. Gates, Edward J. Walsh, Jr.,** and **William H. Harrison,** the Board of Police Commissioners of the City of St. Louis, Mo.

No. 68 C 484(1).

United States District Court,
E. D. Missouri, E. D.

Feb. 2, 1970.

James A. Bell, St. Louis, Mo., for plaintiffs.

Rosecan & Popkin, St. Louis, Mo., for defendants.

MEMORANDUM OPINION

HARPER, Chief Judge.

Plaintiffs filed the complaint in this action seeking an injunction to prevent their arrest and prosecution under Sections 773.010 and 773.020 of the Revised Code of the City of St. Louis (1960), and further seeking to have this court declare the same unconstitutional.

The plaintiffs are two female citizens and residents of St. Louis, Missouri, who have been arrested, prosecuted and convicted under the two ordinances in question numerous times. Defendants are the City of St. Louis and certain named officials of the City of St. Louis who are being sued individually and in their official capacity: Alphonso J. Cervantes, Mayor of the City of St. Louis; Curtis Brostron, Chief of Police of the City of St. Louis; Gary Gaertner, City Counselor of the City of St. Louis; I. A. Long, Clifton W. Gates, Edward J. Walsh, Jr., and William H. Harrison, members of the Board of Police Commissioners of the City of St. Louis. Plaintiffs in-

voke jurisdiction under 28 U.S.C.A. §§ 1331, 1332, 1343(3) and (4), 2201, 2202 and 2281; and the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States. The case was tried by the court without a jury.

The ordinances in question are as follows:

"773.010 *General Prostitution*—No person shall engage in prostitution, or aid, or abet prostitution or procure or solicit any person for the purpose of prostitution, or knowingly accept, receive, or levy or appropriate any money or other thing of value, without consideration, from the proceeds of the earnings of any woman engaged in prostitution.

"773.020 *Prostitutes Wandering Streets, etc.*—No prostitute or lewd woman or female inmate of a bawdy house or house of prostitution or of assignation, brothel or house of bad repute shall wander about the streets in the nighttime, or frequent places of public resort."

Plaintiffs contend that the above ordinances are void because of vagueness and overbreadth and in direct conflict with rights secured by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

The defendants contend that the ordinances in dispute are constitutional, but urge the court to follow the judicial doctrine of abstention. Earlier the defendants urged this court to abstain in a motion to dismiss the complaint. That motion was overruled by this court. In regard to abstention, this court ruled that the pleadings disclosed that the recent limitations on the doctrine of abstention encompassed this case, and abstention therefore appeared to be inapplicable. The evidence presented by the plaintiffs, however, failed to disclose extraordinary circumstances or encroachment of substantial First Amendment rights. It is, therefore, appropriate to reconsider whether the doctrine of abstention is applicable under the facts of this case.

The doctrine of abstention is a court-made rule which was clearly pronounced in the case of Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943). In that case, the doctrine was described, pages 163–164, 63 S.Ct. page 881, as follows:

" * * * Congress, by its legislation, has adopted the policy, with certain well defined statutory exceptions, of leaving generally to the state courts the trial of criminal cases arising under state laws, subject to review by this Court of any federal questions involved. * * *

"It is a familiar rule that courts of equity do not ordinarily restrain criminal prosecutions. No person is immune from prosecution in good faith for his alleged criminal acts. Its imminence, even though alleged to be in violation of constitutional guarantees, is not a ground for equity relief since the lawfulness or constitutionality of the statute or ordinance on which the prosecution is based may be determined as readily in the criminal case as in a suit for an injunction. (Citing cases.) Where the threatened prosecution is by state officers for alleged violations of a state law, the state courts are the final arbiters of its meaning and application, subject only to review by this Court on federal grounds appropriately asserted. Hence the arrest by the federal courts of the processes of the criminal law within the states, and the determination of questions of criminal liability under state law by a federal court of equity, are to be supported only on a showing of danger of irreparable injury 'both great and immediate.'" (Footnotes omitted.)

In Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), the doctrine of abstention was limited; abstention being improper when the issues are within the purview of the First Amendment—"[W]here * * * stat-

utes are justifiably attacked on their face as abridging free expression, or as applied for the purpose of discouraging protected activities." (PP 489–490, 85 S.Ct. p. 1122). In Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967) the limitation on abstention with respect to First Amendment rights was again recognized. Both *Dombrowski* and *Zwickler* recognize the existence of the abstention doctrine and its validity in cases where there is no threat of irreparable injury and encroachment upon substantial First Amendment rights. See also, Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968).

Similarly, the Eighth Circuit has recently recognized the validity of the abstention doctrine. In Wallach v. City of Pagedale, 376 F.2d 671 (8th Cir. 1967), plaintiff sought redress for the alleged violation of his constitutional rights by the City of Pagedale in enforcing certain ordinances. This court sustained defendant's motion to dismiss and on appeal, the Eighth Circuit affirmed, quoting with approval the rule of abstention set out in Douglas v. City of Jeannette, supra, and finding: "No extraordinary circumstances are alleged in our present case which would warrant a departure from the rule just stated." Wallach v. City of Pagedale, at page 674.

■ It is to be noted that in cases like the present where both an injunction and a declaratory judgment are sought, there is a distinction made as to the issue of abstention; that is, the two remedies are to be considered separately. Specifically, with respect to the remedy of injunction, the United States Supreme Court stated in Cameron v. Johnson, 390 U.S. 611, 618, 88 S.Ct. 1335, 1339, that: "Federal interference with a State's good-faith administration of its criminal laws 'is peculiarly inconsistent with our federal framework' and a showing of 'special circumstances' beyond the injury incidental to every proceeding brought lawfully and in good faith is requisite to a finding of irreparable injury sufficient to justify the extraordinary remedy of an injunction." Specifically, with respect to the remedy of declaratory judgment, the United States Supreme Court stated in Zwickler v. Koota, supra, 389 U.S. at pages 249 and 251, 88 S.Ct. 391, that the federal court may abstain only in "special circumstances"—when the state statute is fairly subject to an interpretation which will avoid or modify the federal constitutional question. Both remedies are sought by plaintiffs in the present case.

The allegations contained in plaintiffs' complaint, if true, would require this court to find abstention inapplicable. However, plaintiffs have failed to prove those allegations. The facts established by the credible evidence show clearly that abstention is appropriate as to the injunction and the declaratory judgment.

■ Plaintiff Wilson testified that she is not now a prostitute, but that she worked as a prostitute in 1965, 1966, 1967 and 1968. (On deposition Miss Wilson testified that she had never worked as a prostitute.) Miss Wilson testified that her method of work was to walk upon the streets at night, hailing passing motorists, approaching men in parked cars, and contacting men on the street. She was arrested under the two ordinances in question at least 45 times. Miss Wilson stated that during the four years that she worked as a prostitute, when she was arrested it was when she was working as a prostitute. Miss Wilson stated that only a few of the arrests were at times when she was not engaged in prostitution and there is no evidence as to whether or not she was convicted on those occasions. In regard to prosecution, the evidence is confusing and contradictory. However, it appears that on some occasions Miss Wilson pled guilty and paid fines and on others she pled not guilty and was convicted. In the instances that she was convicted, Miss Wilson at no time appealed or attempted to appeal her convictions.

Plaintiff Burton testified that she is not now a prostitute, but that she was a full-time prostitute during 1966, 1967 and 1968; and a part-time prostitute

prior to 1966. Miss Burton's method of work was similar to Miss Wilson's, except that Miss Burton testified that she did not flag down cars. Miss Burton's arrest and prosecution record is similar to Miss Wilson's in number and in disposition. There is a conflict in Miss Burton's testimony at trial and on deposition as to whether her arrests occurred while she was engaged in prostitution. On deposition, Miss Burton stated that most arrests were while she was actually working; at trial, Miss Burton stated that most arrests occurred while she was not working. When asked to explain the conflict, Miss Burton stated that since her deposition she had fallen and struck her head. The credible testimony of Miss Burton, coupled with her convictions and pleas of guilty, indicate that her arrests occurred while she was actually working. Miss Burton never appealed or attempted to appeal any conviction.

The evidence produced by the defendants showed that both plaintiffs have been treated for venereal disease. There was evidence produced which showed a clear and strong relationship between prostitution, venereal disease and crimes such as beatings and robberies. As to the enforcement of the ordinances involved, Lieutenant Roth of the Vice Squad testified that five men in the Squad enforce the "solicitation" ordinance (773.010) throughout the entire city. Uniformed policemen in the individual police districts are responsible for controlling streetwalking in their districts. Section 773.020 is the only ordinance available to that end. Lieutenant Roth instructs every officer with regard to the type of conduct deemed necessary for an arrest under Section 773.020. The conduct that must be displayed by a woman on the street at night suspected to be a prostitute is motioning to men, pedestrians and motorists, or calling to them or waving to them or beckoning to them provocatively.

As this court stated in Koen v. Long, 302 F.Supp. 1398 (D.C.Mo. 1969): "A federal injunction dealing with state law

enforcement is an extraordinary remedy. It requires much to induce its use." In the present case, the plaintiffs totally failed to prove the alleged bad faith and arbitrary enforcement of the ordinances. Plaintiffs showed no harassment, no chilling of First Amendment rights, and no irreparable injury. Plaintiffs' contention that the delay involved in resorting to the state court system would subject plaintiffs to great injury is without merit. On the contrary plaintiffs have had many occasions to pursue state court remedies on direct appeal, but have not attempted to do so even one time. As a result several years have elapsed. No special circumstances warranting federal intervention have been shown. Plaintiffs' request for injunctive relief will be denied.

■ In addition to the injunctive relief, plaintiffs seek a declaratory judgment as to the constitutionality of the two ordinances of the City of St. Louis.

In Zwickler v. Koota, supra, 389 U.S. at 254, 88 S.Ct. at 399, the United States Supreme Court stated:

"* * * For a request for a declaratory judgment that a state statute is overbroad on its face must be considered independently of any request for injunctive relief against the enforcement of that statute. We hold that a federal district court has the duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of the injunction."

See, Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969); Cameron v. Johnson, supra.

The facts in the present case clearly show these ordinances have not been used for the purpose of abridging plaintiffs' free expression, or applied for the purpose of discouraging protected activities. The testimony did not establish any semblance of irreparable injury. No evidence of "chilling" of any First Amendment rights was presented. No evidence points to the existence of any

plan or scheme to use the ordinances to curtail precious First Amendment rights. There is no evidence of threats of future prosecutions. As a matter of fact, the plaintiffs deny that they are prostitutes, and, therefore, are not presently within the terms of either ordinance. Of course, a declaratory judgment is within the sound discretion of the court, 28 U.S.C.A. § 2201. In *Dombrowski*, the Supreme Court noted that it was peculiarly inconsistent with the basic principles of federalism for the federal judiciary to interfere with the ordinary good faith administration of justice. The language of the case as interpreted in *Zwickler* and *Cameron* is tempered and cautious. To exercise the discretion of Section 2201 in this case is repugnant to the principles of comity and federalism applicable to our dual court systems.

This court stated in Koen v. Long, supra, 302 F.Supp. at 1401:

"The court in Douglas v. City of Jeannette, supra, 319 U.S. at 164, 63 S.Ct. at 881 had this to say: 'It does not appear from the record that petitioners have been threatened with any injury other than incidental to every criminal proceeding brought lawfully and in good faith.'

"This language is applicable to the situation before the court. No person should be immune from prosecution in good faith for his alleged criminal acts. Great reliance is placed by plaintiffs on *Dombrowski*, supra, but the Supreme Court in that case cites the *Douglas* case, supra, with approval, and as I read the case requires special circumstances which have a chilling effect upon the exercise of First Amendment rights to exist in order to make the abstention doctrine inapplicable. This court finds no special circumstances to warrant cutting short the normal adjudication of constitutional defenses in the cause of a criminal prosecution. The evidence demonstrates that this ordinance has not been used for the purpose of a chilling effect upon the exercise of First Amendment rights, the basis for this court injecting itself into their constitutionality as referred to in *Dombrowski*, supra.

"In line with *Douglas*, supra, since this ordinance has not been used as a chilling effect to First Amendment rights, it is an appropriate case for the abstention doctrine set out in *Douglas*, supra."

It is equally applicable here.

Plaintiffs have not shown that federal relief is needed to protect their constitutional rights. There is no reason to believe that the state court will not properly interpret any constitutional question put to them appropriately. In any event, if the state courts should err, review in the United States Supreme Court is available. The matter is one primarily of state concern.

This memorandum opinion is adopted by the court as its findings of fact and conclusions of law and the clerk will prepare and enter the proper order dismissing the action and giving judgment to the defendants herein. Costs will be taxed in full against the plaintiffs.