HOME BUILDERS ASSOCIATION OF
GREATER KANSAS CITY
et al., Plaintiffs,

v.

CITY OF KANSAS CITY, MISSOURI,
et al., Defendants.

No. 73 CV 362–W–1.

United States District Court,
W. D. Missouri, W. D.

Aug. 23, 1974.

Theodore C. Beckett, Kansas City, Mo., for plaintiffs.

Aaron A. Wilson, City Counselor, Richard N. Ward, Associate City Counselor, James C. Bowers, Jr., Asst. City Counselor, City of Kansas City, Mo., for defendants.

MEMORANDUM AND ORDER

JOHN W. OLIVER, District Judge.

This case pends on defendants' motion to dismiss plaintiffs' complaint for (1) failure to satisfy the amount in controversy requirement, 28 U.S.C. § 1331 (1970),[1] and (2) "because plaintiffs have an adequate remedy available to them through the Courts of Missouri." The plaintiffs seek declaratory and injunctive relief against the defendant City of Kansas City, Missouri to prevent the enforcement of certain recently enacted provisions of the City's Subdivision Ordinance.[2] Those sections require that, prior to approval of subdivision plats, the developer (1) dedicate a per-

---

1. While the complaint alleges jurisdiction under 28 U.S.C. § 1441 (1970), it is clear that plaintiffs meant 28 U.S.C. § 1331 (1970), and their brief alludes to a "typographical error" in the complaint.

2. Plaintiffs also seek to maintain this suit as a class action on behalf of all similarly situated land developers. Fed.R.Civ.P. 23(b)

(2). The defendants have moved to dismiss the class action on the basis of the plaintiffs' failure to allege that each member of the class will sustain damages in excess of $10,000. See Zahn v. Int'l Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). We need not reach the class action question.

centage of the property to the City for park or recreational use,[3] or, in lieu of such dedication, make a cash payment to the City for acquisition of park and recreational land;[4] and (2) purchase a performance bond to insure construction of all required public improvements.[5] Plaintiffs allege that these sections violate rights protected by the Fifth and Fourteenth Amendments to the United States Constitution and by the Constitution of the State of Missouri.[6]

■ The first ground of defendants' motion, failure to satisfy the amount in controversy requirement, is not tenable. Jurisdiction of an action seeking to enjoin an unconstitutional deprivation of property rights may be maintained without regard to the amount in controversy

---

3. (a) Dedication. Subdivision plans shall dedicate land for park uses at locations designated in the comprehensive plan, or the official parks plan adopted by the Board of Parks and Recreation Commissioners or as determined by the subdivider and the staff of City Development and Parks and Recreation, at the rate of four (4) acres per one hundred (100) living units or nine percent (9%) of the merchantable land. When the percentage of merchantable land will result in a tract of less than four acres, the City Plan Commission may require the open space to be located at a suitable place on the periphery of the subdivision, so a more usable tract will result when additional open space is obtained when adjacent land is subdivided. In all cases, the developer will dedicate such approved park land to the city for park purposes as a condition of final subdivision approval. All land to be dedicated to the city for park purposes shall have the prior approval of the Board of Parks and Recreation Commissioners, and shall be shown and marked on the plan as "Dedicated to Kansas City, Missouri, for park and/or recreation purposes," and the plat will be so endorsed by the President of the Board of Parks and Recreation Commissioners. When the percentage of merchantable land indicates an open space parcel of less than two (2) acres, or, in the opinion of the City Plan Commission, will create an insurmountable hardship to the development, the City Plan Commission at its option may require the subdivider, in lieu of dedication of open space to pay a sum of money per planned housing unit in lieu of dedication. [Kansas City, Missouri Code of Gen.Ordinances, § 31.32(a) (1973)].

4. (b) Cash in lieu of land dedication. When the dedication of park land, as required by this section has been determined to work an undue hardship on the development, or the tract size is inadequate for the intended purpose in the opinion of the City Plan Commission, the subdivider shall deposit with the City Treasurer for the Parks and Recreation Acquisition and/or Development Trust Fund prior to receiving a building permit, a cash payment without recourse or the right of recovery, equal to sixty dollars multiplied by a designed [sic] number of living units in the subdivision, less a credit that any land actually dedicated for park purposes, bears to the proportion of total land required for park purposes in subsection (a) hereof. Such funds shall be used for the acquisition, development or improvement of a public park generally, within one-half mile of the periphery of the subdivision by the Parks and Recreation Department as authorized by the City Charter. [Kansas City, Mo.Code of Gen.Ordinances, § 31.32(b) (1973)].

5. Where the required improvements have not been completed prior to the submission of the final plat, and the applicant did not select either Option No. 2 or Option No. 3, section 31.12 of these regulations, the approval of said plat shall be subject to the subdivider guaranteeing the installation of said improvements through one of the following methods:

1. Filing a performance and labor and material bond in the amount of one hundred and ten percent (110%) of the estimated remaining construction cost as determined by the city engineer for any unconstructed portions.

2. Depositing or placing in escrow a certified check, cash, or other acceptable pledge, in the amount of one hundred and ten percent (110%) of the remaining construction cost as approved by the city engineer. In the event the subdivider elects to provide an escrow agreement, he shall pay to the city for the cost of administrating the escrow agreement, a sum of money equivalent to two (2) percent of the cost as estimated by the city engineer. [Kansas City, Mo. Code of Gen.Ordinances, § 31.13(b)(15) (1973)].

6. Specifically, plaintiffs maintain that the provisions in question deprive them of property without due process or just compensation, constitute a denial of equal protection and are beyond the police power of the City to regulate land development.

under 28 U.S.C. § 1343(3) (1970). Lynch v. Household Finance, 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972).

The primary issue raised by defendant's motion concerns the doctrine of abstention. After languishing in disuse for several years,[7] the doctrine has been applied with renewed vigor recently by the United States Supreme Court.[8] The roots of abstention derive from Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) in which Justice Frankfurter enunciated the policy of avoiding decisions on federal constitutional questions where a decision on issues of state law could be controlling and "needless friction with state policies" could result from a "premature constitutional adjudication." Id. at 500, 61 S.Ct. 643. In *Pullman*, the Supreme Court directed that the federal courts, while retaining jurisdiction over the matter, abstain from deciding a case involving a federal constitutional attack on certain state administrative regulations until the state courts could determine whether those regulations were authorized by relevant state law. Id. at 501–502, 61 S.Ct. 643. Subsequent cases recognize that abstention is proper only in such "narrowly limited 'special circumstances' Propper v. Clark, 337 U.S. 472, 492, 69 S.Ct. 1333, 93 L.Ed. 1480". Zwickler v. Koota, 389 U.S. 241, 248, 88 S.Ct. 391, 395, 19 L.Ed.2d 444 (1967). Lake Carriers Association v. MacMullan, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972); Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970).

We find and conclude that the doctrine of abstention is applicable to this case. Plaintiffs allege that certain provisions of the Kansas City Subdivision Ordinance violate rights secured by the federal and state constitutions. Whether these provisions violate the relevant sections of the Missouri Constitution[9] presents issues of state law that may be dispositive of the action and make a decision on the federal constitutional issues unnecessary. In City of Meridian v. Southern Bell Telephone & Telegraph Co., 358 U.S. 639, 79 S.Ct. 455, 3 L.Ed. 2d 562 (1959), the Supreme Court held that abstention was the proper course where the plaintiff sought a declaratory judgment based on violations of both the federal and state constitutions. Id. at 641, 79 S.Ct. 455.

The parties agree that the Subdivision Ordinance provisions involved in this case have never been tested in the courts of Missouri. A decision by the courts of Missouri on their validity under the Missouri Constitution could avert a federal constitutional decision.

Other questions of state law are presented which command that this Court apply the abstention doctrine. Defendant City of Kansas City contends that the Subdivision Ordinance was enacted under power granted by V.A.M.S. § 89.410 (1969). If, as a matter of state law, it is determined that the provisions of the Ordinance are not within the statutory authority, the provisions will be void. A state court decision on statutory authority would therefore "avoid or modify the [federal] constitutional question" and thus recommend abstention by the federal court. Zwickler v. Koota, *supra,* 389 U.S. at 249, 88 S.Ct. at 396.

There can be no reasonable doubt that it may be necessary for some Missouri court to add gloss to the Missouri statutory law before any federal court can know what the Missouri law actually

7. See, Note, Federal-Question Abstention: Justice Frankfurter's Doctrine in an Activist Era, 80 Harv.L.Rev. 604 (1967).

8. See Lake Carriers Assn. v. MacMullan, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972); Askew v. Hargrave, 401 U.S. 476,

91 S.Ct. 856, 28 L.Ed.2d 196 (1971); and Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970).

9. Mo.Const., art. 1, §§ 10 and 26; art. 2, § 1.

means. Under the enabling statute the City is authorized to:

> provide for the dedication, reservation, or acquisition of lands and open spaces necessary for public uses indicated on the city plan and for appropriate means of providing for compensation, including reasonable charges against the subdivision, if any, and over a period of time and in a manner as is in the public interest. [V.A.M. S. § 89.410(2)(1971)]

Professor Robert A. Freilich and Mr. Peter S. Levi have noted that "[T]he wording of this section does not clearly indicate the meanings of such key terms as 'compensation' or 'reasonable charges.'" Freilich, Robert H. and Levi, Peter S., Model Regulations for the Control of Land Subdivision, 36 Mo.L.Rev. 1, 27 (1971).

Also under the enabling statute, the City is authorized to enact regulations providing:

> that, in lieu of the completion of the work and installation previous to final approval of a plat, the council may accept a bond in an amount and with surety and conditions satisfactory to it, providing for and securing the actual construction and installation of the improvements and utilities, within a period specified by the council and expressed in the bond . . . . [V.A.M.S. § 89.410(2) (1971)]

While this language may settle the issue of whether a city may require a performance bond, uncertainty remains as to the terms of the bond requirements in the Kansas City Ordinance and whether performance, labor, and material may all be covered. Such questions of state law, the determination of which may affect or moot the federal constitutional questions, remain sufficiently uncertain to require this Court to abstain until the courts of Missouri have construed the ordinance in light of the State constitution and enabling statutes. See Warren v. Government National Mortgage Association, 443 F.2d 624 (8th Cir., 1971).

Plaintiffs, however, contend that abstention is not proper in this case because the state and federal constitutional issues are essentially the same and because they have not asserted a claim based on the City's lack of authority, under state statutory law, to create the challenged ordinance sections. Since *Pullman, supra,* the Supreme Court has never suggested that abstention is improper where federal and state constitutional issues are basically the same. In City of Meridian v. Southern Bell Telephone & Telegraph Co., *supra,* the Supreme Court directed abstention on the basis of state constitutional issues:

> In such a case, where the state court's interpretation of the statute or evaluation of its validity under the state constitution may obviate any need to consider its validity under the Federal Constitution the federal court should hold its hand, lest it render a constitutional decision unnecessarily. [358 U.S. at 641, 79 S.Ct. at 457]

Although some lower courts have suggested that their refusal to abstain was based on the similarity of state and federal constitutional issues, see Steel Hill Development, Inc. v. Town of Sanbornton, 335 F.Supp. 947 (D.N.H.1971); Lerner v. Town of Islip, 272 F.Supp. 664 (E.D.N.Y.1967), the basic inquiry, in our judgment, must be directed to the issue of whether a state court decision on state law would "avoid or modify" a federal constitutional determination. Zwickler v. Koota, *supra,* 389 U.S. at 249. Finally, the plaintiffs' assertion of state constitutional violations makes it unnecessary for us to decide whether abstention could be based solely on state statutory questions which were not specifically raised in the complaint.

For the reasons stated, it is

Ordered that plaintiffs' complaint should be and the same is hereby dismissed without prejudice.