**BLACK UNITED FUND OF NEW JERSEY, INC., Plaintiff,**

v.

**Thomas H. KEAN, Defendant.**

**Civ. A. No. 84–3565.**

United States District Court,
D. New Jersey.

Oct. 4, 1984.

---

Dwayne C. Vaughn, Newark, N.J., for plaintiff.

Irwin I. Kimmelman, Atty. Gen. of N.J. by Mary D. Scaliti, Deputy Atty. Gen., Newark, N.J., for defendant.

## OPINION

SAROKIN, District Judge.

### INTRODUCTION

In this case plaintiff seeks to have the same access to state employees for fund

raising purposes as is accorded to the United Way. The state has taken the position that the applicable statute, N.J.Stat.Ann. 52:14–15.9c, was intended to grant such privileges to the United Way *only*. No one could seriously challenge the state's right to limit the number and control the character of charity drives conducted in state offices and directed at state employees during business hours. To permit any and all charities to have such direct access could bring the operation of the state's business to a halt.

The subject statute may have dealt with that problem and opened the state's doors to combined charity drives only, such as community chests, united funds and united appeals. The state, however, has interpreted its own statute to exclude *all* charities other than the United Way. It, and it alone, is accorded the right to solicit and utilize state employees during regular business hours in state offices for the purpose of obtaining contributions by payroll deductions. This advantage cannot be overemphasized. It undoubtedly increases the size and number of contributions and guarantees collection. The use of this state service paid for by the taxpayers is granted to the United Way, but denied to the plaintiff and all others.

The issue thus posed is whether the state having opened its doors and services to one charitable organization can deny access to all others without having established any standards or procedures by which another charity could even be considered. Indeed, part of plaintiff's frustration in this matter arose from its inability for many months to obtain a definitive response to its inquiries and the reasons in support thereof.

The value and benefit which has been conferred upon the United Way and denied to plaintiff is substantial. Indeed plaintiff does not seek to terminate those benefits as to United Way, but merely to acquire the same for itself. The issue thus posed clearly implicates constitutional questions and confers jurisdiction upon this court. Given the fact that a state statute is involved, it might be preferable to have the state court rule on the constitutionality of the statute in the first instance. Yet, because of the emergent nature of this application, the irrefutable and irreparable harm to the plaintiff if its position is deemed to be correct, and the clear constitutional violation presented, it is incumbent upon this court to act and not to abstain.

## FACTS

Each year, the State of New Jersey opens its doors to the thirty-one chapters of the United Way, a non-profit corporation formed for the purpose of raising and distributing funds to benefit selected charitable organizations. This year, for over two months, volunteers from the United Way will be granted access to state offices throughout New Jersey for the purpose of soliciting contributions from state employees. During this "Annual State Charitable Giving Campaign," the United Way will present speakers, schedule oral and visual presentations, and distribute written solicitation materials, all providing information about the United Way and the particular organizations it benefits with the aim of encouraging contributions. The campaign is immensely profitable for the United Way: this year, the organization expects to raise over one-half million dollars from state employee contributions. *See generally*, Affidavit of James G. Crowley, Executive Vice President, Delaware Valley United Way, September 6, 1984, ¶ 1–9. All of these monies will be channelled directly to the organization from the state payroll pursuant to a state statute, N.J.Stat.Ann. 52:14–15.9c, authorizing payroll deductions to the United Way from the paychecks of employees who have made pledges to the group. Through this deduction system, employees may conveniently spread out a contribution to the United Way over a year. For the United Way, the system is an inexpensive, efficient, and enormously cost-effective means of assuring itself of a large, continuous flow of funds.

The Black United Fund of New Jersey ("BUF/NJ") is also an umbrella organization formed for the purpose of raising funds to benefit selected health and welfare groups. The BUF/NJ is newer and smaller than the United Way, however, and

differs in philosophy from the United Way as well. The BUF/NJ emphasizes health and welfare services which tend to eliminate prejudice and discrimination," Affidavit of Kenneth L. Tyler, Executive Director, Black United Fund of New Jersey, August 31, 1984, ¶ 3, and targets members of the minority community both as contributors and beneficiaries. Since mid-1982, the BUF/NJ has applied on a number of occasions to the office of the Governor requesting that it be allowed to join in the Annual Campaign alongside the United Way, or that it be granted equivalent access to state employees and the payroll deduction mechanism in a one-time separate campaign. The Governor has denied all of these requests.

Relying on an advisory opinion by the New Jersey State Attorney General,[1] the Governor claims that New Jersey Statute Annotated 52:14–15.9c authorizes access to the payroll deduction system only for the United Way and not for any other independent organization like the BUF/NJ. Though the statute by its terms authorizes payroll deductions to benefit "a United Fund, Community Chest, or United Appeals," the Governor explains that this language refers only to three specific organizations, known by those three specific proper names, that were in existence in 1955, when the statute was passed. The United Way is a direct successor to one of those organizations and is thus presumptively included in the Annual Campaign, according to the Governor. Because the BUF/NJ is not a direct descendent of one of these specific organizations, the Governor concludes, he has no power under New Jersey Statute Annotated 52:14–15.9c to permit the BUF/NJ to join in the Annual Campaign or to mount a separate campaign.

The BUF/NJ, to the contrary, contends that the statute contemplates access to the payroll deduction system for any charity that is one of a generic group of "United Funds," "Community Chests," or "United Appeals"—that is, for any umbrella-type charitable organization which, like the United Way, raises and distributes funds for a number of individual charitable organizations. The BUF/NJ challenges the Governor's denial of access to it on the grounds, that *inter alia*, the action violates the rights of the BUF/NJ to freedom of speech under the first amendment, made applicable to the states through the fourteenth amendment, and violates the BUF/NJ's rights to due process and equal protection under the fourteenth amendment. Specifically, the BUF/NJ contends that the Governor's denial is arbitrary and capricious, an act of unreasonable and standardless favoritism toward the United Way, and an unreasonable denial of the BUF/NJ's right of access to a public forum. To the extent that New Jersey Statute Annotated 52:14–15.9c might be construed to authorize the Governor's action, the BUF/NJ maintains that it, too, is unconstitutional.

In this motion, the BUF/NJ seeks a preliminary injunction compelling the Governor to permit the BUF/NJ to participate in the 1984 Annual Campaign, which began on September 11, 1984, or, in the alternative, not to permit any solicitation of state employees for so long as the BUF/NJ is excluded from participation. The Governor not only opposes the granting of this relief, but requests the court to abstain from deciding the matter under the doctrine of *Railroad Comm'n. of Texas v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). He contends, on one hand, that the statute is constitutional on its face and as applied, but, on the other hand, that if there is any question as to the constitutionality of the statute, resolution of the question necessitates a definitive state court interpretation. Since the statute has never been authoritatively construed by the New Jersey courts, the Governor argues, this court should defer to the state courts without reaching the plaintiff's constitutional claims.

## DISCUSSION

### 1. *Abstention*

■ Whether or not this court should abstain is a question preliminary to, yet

---

**1.** The Governor has not furnished a copy of the Attorney General's opinion to the court.

intimately intertwined with, a consideration of the merits of the plaintiff's case. Abstention is appropriate under *Pullman* where a "challenged state statute is susceptible of a construction by the state judiciary that would avoid or modify the necessity of reaching a federal constitutional question." *Kusper v. Pontikes,* 414 U.S. 51, 54, 94 S.Ct. 303, 306, 38 L.Ed.2d 260 (1973). The mere fact that a statute has not been construed by a state court does not compel abstention, *Harman v. Forssenius,* 380 U.S. 528, 534–35, 85 S.Ct. 1177, 1181–82, 14 L.Ed.2d 50 (1965), however; nor does a "bare, though unlikely possibility that state courts *might* render adjudication of the federal question unnecessary." *Hawaii Housing Authority v. Midkiff,* — U.S. ——, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984) (emphasis in original). Instead, the statute must be " 'obviously susceptible of a limiting construction.' " *Id., quoting Zwickler v. Koota,* 389 U.S. 241, 251 n. 14, 88 S.Ct. 391, 397 n. 14, 19 L.Ed.2d 444 (1967). Moreover, because of "the delay and expense to which application of the abstention doctrine inevitably gives rise," *England v. Medical Examiners,* 375 U.S. 411, 418, 84 S.Ct. 461, 466, 11 L.Ed.2d 440 (1964), the doctrine must be "narrowly limited." *Propper v. Clark,* 337 U.S. 472, 492, 69 S.Ct. 1333, 1344, 93 L.Ed. 1480 (1948). Where "it cannot be fairly concluded that the underlying state statute is susceptible of an interpretation that might avoid the necessity for constitutional adjudication, abstention would amount to shirking the solemn responsibility of the federal courts to 'guard, enforce, and protect every right granted or secured by the Constitution of the United States.' " *Kusper,* 414 U.S. at 55, 94 S.Ct. at 306, *quoting Robb v. Connolly,* 111 U.S. 624, 637, 4 S.Ct. 544, 551, 28 L.Ed. 542 (1884). Abstention "cannot be ordered simply to give state courts the first opportunity to vindicate the federal claim." *Zwickler,* 389 U.S. at 251, 88 S.Ct. at 397.

■ The doctrine of abstention is to be invoked especially sparingly where the exercise of first amendment rights might be delayed as a result of a decision to abstain. *Baggett v. Bullitt,* 377 U.S. 360, 379, 84 S.Ct. 1316, 1326, 12 L.Ed.2d 377 (1963);

*Procunier v. Martinez,* 416 U.S. 396, 404, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1973). In first amendment cases, the Supreme Court has recognized that the mere existence of an overbroad or vague statute, though susceptible of a limiting construction, might well operate to chill the exercise of first amendment rights during the pendency of a state proceeding brought to obtain that limiting construction. *Baggett,* 377 U.S. at 379, 84 S.Ct. at 1326; *Zwickler,* 389 U.S. at 250–52, 88 S.Ct. at 396–97. The possibility of this chilling effect by itself justifies a refusal to abstain. *Id.*

■ In light of this authority, the court relies upon two grounds to conclude that abstention is inappropriate here. First, neither one of the two readings given New Jersey Statute Annotated 52:14–15.9c by the parties would render it constitutional. Because these are the only fair readings of the statute, absent a virtual re-writing of it, abstention and referral of the case to a state court would not avoid the constitutional questions raised and would only amount to an abdication of this court's responsibility to decide the federal questions presented to it. Second, even if the statute were easily susceptible of a limiting state construction which might render it constitutional, the statute's ongoing "chilling effect" on potential participants in the Annual Campaign by itself offends the first amendment and makes abstention inappropriate. A consideration of these points convinces the court not only that abstention is inappropriate, but that the plaintiff's complaint has merit and that preliminary relief should be granted.

### 2. The Statute

New Jersey Statute Annotated 52:14–15.9c provides in pertinent part that

Whenever any person holding public office, position or employment, whose compensation is paid by this State ... shall indicate in writing to the proper disbursing officer his desire to have any deductions made from his compensation for the payment of contributions to a United Fund, Community Chest or United Ap-

peals, such deduction shall be made by the State Treasurer in his discretion, if such compensation is payable by the State Treasurer....

As noted, the Governor contends that reference in the statute to a "United Fund," "Community Chest," and "United Appeals" denotes certain entities existing in 1955. Under this reading, the statute leaves the Governor powerless to allow the BUF/NJ to participate in soliciting payroll contributions from state employees, because it reserves the benefit of payroll contributions only to the named charities which existed in 1955.

In contrast, the BUF/NJ reads the words "United Fund," "Community Chest," and "United Appeals" as referring to certain *categories* of charities—those engaging in combined-charity fund raising. According to this interpretation, the issue of whether or not any particular charity is a "united fund" under the statute is not a foregone conclusion, but a question which should be decided in light of the objectives of the legislature in passing the statute. Rather than being unreasonably rigid, the statute under this reading is flexible, but ultimately fatally so. New Jersey Statute Annotated 52:14–15.9c fails to articulate any objectives at all to guide the necessary determination. Instead, the statute invests in a single executive official, the state Treasurer, absolute discretion over whether to make any particular deduction, without establishing any standards or delineating any policies either to guide the Treasurer's exercise of his discretion, or for the purpose of reviewing his action after the fact. The Treasurer, in turn, has failed to establish any standards or criteria.

The statute's rigid exclusion of the BUF/NJ, if the Governor's interpretation is adopted, and the standardless delegation of authority to the Treasurer to pick and choose among possibly eligible "united funds," if the BUF/NJ's interpretation is correct, are both equally offensive to the first and fourteenth amendments. Under the first interpretation, the statute unreasonably excludes the BUF/NJ from a forum for the exercise of its first amendment rights and makes an irrational distinction

between the BUF/NJ and the United Way in the granting of a government benefit in violation of the equal protection clause of the fourteenth amendment. Under the second interpretation, the statute is an unconstitutional delegation to an executive official of unbridled, unreviewable discretion over the allocation of access to a first amendment forum, in violation of the first and fourteenth amendments.

3. *First Amendment Rights Implicated in New Jersey Statute Annotated 52:14–15.9c*

■ The threshold inquiry to determine the constitutionality of the statute under either interpretation is to identify the first amendment rights at stake for the BUF/NJ in being denied participation in the Annual Campaign. Since the Supreme Court decision in *Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1979), there is no question that the solicitation of charitable contributions constitutes an exercise of first amendment rights. In *Schaumburg*, the Court struck down an ordinance requiring charities to obtain permits before soliciting door to door on the grounds that the showing required for obtaining the permit amounted to an overbroad restriction on the charities' speech rights. The Court rejected an argument, urged by the municipality, that "the ordinance should be sustained because it deals only with solicitation and because any charity is free to propagate its views from door to door in the village without a permit as long as it refrains from soliciting money." *Id.* at 628, 100 S.Ct. at 831. The Court noted that "charitable appeals for funds ... involve a variety of speech interests—communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes—that are within the protection of the First Amendment." *Id.* at 632, 100 S.Ct. at 833. Most significantly, the court emphasized that, while

[s]oliciting financial support is undoubtedly subject to reasonable regulation ... [any such regulation] ... must be undertaken with due regard for the reality

that solicitation is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues, and *for the reality that without solicitation the flow of such information and advocacy would likely cease.*

*Id.* at 632, 100 S.Ct. at 833–34 (emphasis supplied). The Court thus fully recognized the role that the receipt of contributions plays as an *incentive* to engage in speech activities. Curtailing that incentive, the Court recognized, also curtails the speech activities which are inextricably bound up with the solicitation. The mere fact that charities in *Schaumburg* were free to go from door to door unconstrained by the permit requirement, as long as they did not solicit, did not rescue the solicitation permit requirement from unconstitutionality where the *solicitation* was the prime impetus behind the "flow of information."

In this case, the possibility of obtaining contributions by payroll deduction is clearly an enormous incentive for the precipitation of a "flow of information" about the United Way in the state offices. The profitability of the Annual Campaign has inspired the United Way to arrange for speakers, gatherings, and a variety of other communicative, collective activities among state employees, all directed toward obtaining payroll deduction contributions. This outpouring of information is clearly worthwhile for the United Way because of the tremendous benefit the United Way receives from the payroll deduction, an easy, efficient means of insuring a regular stream of contributions. The past profitability of the deduction system also plainly enables the United Way to mount its informational campaign year after year.

Even more significant is the fact that, by all indications in the record, the availability of contributions by payroll deductions is inextricably linked in the minds of the Governor and the parties with the United Way's yearly informational campaign. The Governor's brief maintains that "charities are not prohibited, either by statute or otherwise, from conducting fund raising campaigns, disseminating information or advocating their ideas by means other than the payroll deduction mechanism." (Defendant's Brief, p. 19). Yet nothing in the record indicates that the Governor has ever permitted any other organization to conduct a campaign of a size, magnitude, and regularity even remotely rivalling that conducted by the United Way *without* a payroll deduction feature. Nothing indicates that the BUF/NJ was ever so permitted; nor does the record demonstrate that any other organization has ever carried on such a substantial campaign without the payroll deduction mechanism. For the United Way, and the United Way alone, a huge annual informational campaign is conducted because of the availability of the payroll deduction. Campaigns by other organizations are rare or non-existent. The payroll deduction mechanism is not only the raison d'etre for the United Way's campaign, it is the equivalent of a modern automatic door by which the United Way gains entrance into the offices of the state year after year to make presentations and disseminate information on its own behalf.

The payroll deduction system and the accompanying informational campaign thus unquestionably implicate first amendment speech interests. Given these first amendment interests, any regulation of the practice of soliciting payroll deduction contributions among state employees is subject to a constitutionally mandated level of judicial scrutiny. In its recent decision, *Perry Education Assn v. Perry Local Educators' Assn*, 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983), the Supreme Court clarified the two levels of scrutiny that are applicable to the regulation of first amendment activity, depending on the type of forum in which the activity is to occur. According to *Perry*, speech can be regulated as to time, place and manner in a traditional public forum (such as a sidewalk or a park), or in a "limited public forum" (a forum which is opened specially for public use), only where the regulations are "narrowly tailored to serve a significant government interest" and "ample alternative channels of communication" remain available. *Perry*, 460 U.S. at 45, 103 S.Ct. at 954; *see also*

*NAACP Legal Defense and Education Fund, Inc. v. Devine*, 727 F.2d 1247, 1256 (D.C.Cir.1984). In such fora, speech cannot be prohibited entirely, and any content-based exclusions must serve a compelling state interest. In areas which are not traditional or limited public fora, by contrast, the state may not only impose time, place and manner restrictions, it can specifically "reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable...." *Perry*, 460 U.S. at 46, 103 S.Ct. at 955. Where distinctions are made among groups as to access, the differential access policy must be "reasonable in light of the purpose which the forum ... serves." *Id.* at 49, 103 S.Ct. at 957. The state may restrict access "to those who participate in the forum's official business." *Id.* at 53, 103 S.Ct. at 959.

The Annual Campaign for payroll contributions exhibits some elements of a "limited public forum," opened by the state "as a place for expressive activity." *Id.* at 45, 103 S.Ct. at 955. While the state has no constitutional obligation to grant charitable solicitors access to its offices and payrolls in the first instance, it has chosen to allow numerous volunteers from the United Way, armed with expressive materials, to enter into its offices for the purpose of communicating with employees. Arguably, the state thus created a "limited public forum" for which the rules on restrictions in traditional public fora apply. The court need not reach the question of whether the Annual Campaign payroll deduction system constitutes a limited public forum, however, because the restrictions on access to the Campaign for payroll deductions under the Governor's interpretation of New Jersey Statute Annotated 52:14–15.9c fail to meet even the minimal requirement of reasonableness which governs access to a nonpublic forum. *Cf. NAACP*, 727 F.2d at 1257. (exclusion of Legal Defense Funds from federal charitable campaign failed to meet *Perry* requirement of reasonableness).

### 4. *The Governor's Interpretation— Blanket Exclusion of the BUF/NJ*

### a. As a Violation of the First Amendment

In *Perry*, the Supreme Court condoned a school's exclusion of one teacher's union from access to the school's faculty mailboxes when the school at the same time granted access to another union. The critical distinction between the two unions justifying differential access was that the admitted union was the exclusive bargaining representative of the faculty. As such, it had a number of official duties within the school which required access to the mailboxes. The excluded union, in contrast, had no official functions requiring mailbox access. The distinction was reasonable in light of the business objectives ·of the school, and the difference in *"status"* between the two unions with regard to those objectives. *Perry*, 460 U.S. at 49, 103 S.Ct. at 957. (emphasis in original).

Here, in contrast, the United Way and the BUF/NJ have no different "status" in connection with the "official business" of the state government. Neither the United Way nor the BUF/NJ has anything to do with the running of state government. Rather, the state has, on a purely gratuitous basis, extended access to the United Way, while denying similar gratuitous access to the BUF/NJ. The distinction between the two charities cannot be justified on the ground that the state may "restrict use [of a forum] to those who participate in the forum's official business," *Perry* at 53, 103 S.Ct. at 959, without implicitly elevating the United Way into an "official" state charity. Not even the Governor argues that New Jersey Statute Annotated 52:14–15.9c contemplated the creation of "official" state charities, as offensive as that notion would be to our American tradition of pluralism, and as perilously close as it would come to an improper content-based regulation of speech.

Nor is the distinction between the United Way and excluded charities reasonable in general "in light of the purposes which the forum ... serves." *Id.* at 49, 103 S.Ct. at

957. The purpose of the state offices, state employees, and the state payroll is obviously to run the state's business. The state could validly, and reasonably, decide that it must limit access to its facilities in order not to unduly disrupt the operation of state business. Access must be allocated, however, in "some even-handed manner," *NAACP v. Devine*, 727 F.2d at 1265, citing *Heffron v. Int'l Society for Krishna Consciousness*, 452 U.S. 640, 649, 101 S.Ct. 2559, 2564, 69 L.Ed.2d 298 (1980), without presumptively favoring one group over another. If the Legislature wanted to restrict access to charities which would benefit the most individuals while incurring the least disruption, it could do so. But it cannot do so presumptively, without any on-going factual inquiry into the degree to which any one applicant for access meets the specified criteria, and still maintain that it is acting reasonably.[2]

b. As a Violation of Equal Protection

Presumptive favoring of one charity over all others without the use of criteria to adjust to evolving circumstances is not merely unreasonable, it is not even minimally rational. The court's emphasis on the word "reasonable" in *Perry*, rather than the word "rational," suggests that the *Perry* "reasonableness" test is not the mere equivalent of the "rational basis" test that applies in the equal protection context when no fundamental right or suspect classification is involved. *Cf. NAACP*, 727 F.2d at 1266 (*Perry*'s reasonableness test sets a higher standard than a mere "rational basis" test). Indeed, collapsing the *Perry* reasonableness test into a rational basis test, with the minimal scrutiny which that implies, might risk rendering "the First Amendment a nullity in that part of the public domain" which the Supreme Court has denominated the " 'nonpublic forum.' " *NAACP*, 727 F.2d at 1267. The niceties of this distinction are of no concern here, however, because New Jersey Statute Annotated 52:14–15.9c, as interpreted and applied by the Governor, is so arbitrary and irrational that it fails even the minimal rationality test that applies in the equal protection context.

■ The statute, if it is read as the Governor proposes, thus offends not only the first amendment, but the equal protection clause of the fourteenth amendment as well. As the Supreme Court has recently reaffirmed, "[w]hen a state distributes benefits unequally, the distinctions it makes are subject to scrutiny under the Equal Protection Clause of the Fourteenth Amendment." *Zobel v. Williams*, 457 U.S. 55, 60, 102 S.Ct. 2309, 2312, 72 L.Ed.2d 672 (1981). Access to the state payroll deduction mechanism, and the license to conduct a concomitant solicitation campaign, are clearly benefits which the State of New Jersey has conferred upon the United Way, but denied to the BUF/NJ. The statute which authorizes this differential treatment, according to the Governor's claims, as well as the Governor's actions themselves, offend the equal protection clause because they do not "rationally further [ ] a legitimate state purpose." *Id.*

The statute, as the Governor has applied it, fails even the minimal rationality test because it carves in stone the Legislature's judgment as to charities worthy of access to the state payroll ·made nearly thirty years ago, at a time when the BUF/NJ did

---

**2.** As a secondary consideration, the Supreme Court in *Perry* discusses the availability of "alternative access" to the desired audience as a determinant of whether excluding would-be speakers from a nonpublic forum is constitutionally permissible. Once a differential access policy has been deemed reasonable in light of a forum's purpose, *Perry* suggests, the court should consider whether the excluded speaker has some other means of access to the target audience as an additional criterion of "reasonableness." 460 U.S. at 53–54, 103 S.Ct. at 959. Where, as here, the differential access policy is not reasonable according to the "forum purpose" test, the question of alternative access need not be reached. *See NAACP v. Devine*, 727 F.2d at 1265 (principal inquiry in case involving access to nonpublic forum was not uniqueness of forum but whether reasonable ground for differential access policy existed). In any event, in this case the uniqueness of the Annual Campaign and payroll deduction mechanism as a forum, given the Campaign's immense profitability and the outpouring of speech activity it inspires, is clear.

not even exist as an entity to be considered. Whatever judgment the Legislature made in 1955 with regard to the relative merits of other charities existing in 1955 *cannot* be reasonable when applied to exclude the BUF/NJ and other recently formed charities, when they were not even in existence in 1955. The flaw in the Governor's version of the statute is that it makes no provision for any change in circumstances, such as the formation of a new potential payroll-deduction beneficiary, over time. The statute locks in a one-time policy judgment by naming a specific beneficiary of the payroll deduction system. While the Legislature's choice may have been rational in 1955, given the range of charities existing in 1955, its unbending application in the context of changed circumstances is not rational, particularly when it is applied to exclude any charity formed since 1955.

Rigid exclusion of new charities such as the BUF/NJ from the Annual Campaign, and presumptive *inclusion* of the United Way, unreasonably favors the United Way on the basis of a characteristic that is not rationally relevant to any legitimate governmental purpose: that is, the mere fact that the United Way existed for consideration by the Legislature in 1955. The Supreme Court has specifically recognized the arbitrariness of favoring a group simply because of its longevity. *See Zobel v. Williams*, 457 U.S. 55, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1981). In *Zobel*, the Court struck down as not even minimally rational an Alaska statute that provided for an unequal distribution of dividends from the state's mineral income to state citizens depending on the number of years each recipient had resided in the state. In a concurring opinion, Justice Brennan, joined by three other Justices, explained that

> [p]ermissible discriminations between persons must bear a rational relationship to their *relevant* characteristics. While some imprecision is unavoidable in the process of legislative classification, the ideal of equal protection requires attention to individual merit, to individual need. In almost all instances, the business of the State is not with the past, but with the present: to remedy continuing

injustices, to fill current needs, to build on the present in order to better the future.

*Id.* at 70, 102 S.Ct. at 2318. (emphasis in original). According to the Governor, the state interest underlying New Jersey Statute Annotated 52:14–15.9c is an interest in "facilitating charitable giving to the broadest range of needs, while avoiding the overburdening of the payroll deduction system...." (Defendant's Brief at 20–1). It hardly needs saying that the mere fact that the United Way existed in 1955 is not a characteristic relevant to this interest. The fact that the United Way is an "established" charity might indicate that it is more "trustworthy" than newer charities today, but that could hardly have been a factor in the United Way's favor in 1955, when it was only five years old (just one year older than is the BUF/NJ today). In any event, the mere age of a charity, standing alone, is an imprecise indicator of its trustworthiness. Even more important, casting a unique and favorable advantage upon a charity simply because of its longevity creates a potential for invidious discrimination against charities formed by minority and other groups which, because of past discrimination against them, may not have had the political or economic wherewithal to form charities until recent years. *Compare, Zobel*, 457 U.S. at 69, 102 S.Ct. at 2317 (Brennan, J., concurring) ("[T]he Alaska plan discriminates against the recently naturalized citizen, in favor of the Alaska citizen of longer duration," an effect which is "surely ... constitutionally suspect.") Aside from the mere existence of the United Way, there is no other characteristic that the Legislature *could have* considered in the United Way's favor as against the BUF/NJ, given that the BUF/NJ did not exist when the statute was passed. It is a violation of all recently formed charities' right to equal protection to exclude them from access to the Annual Campaign on the basis of the 1955 statute.

### c. As a Violation of Due Process

The unique "favorite son" status accorded the United Way because it existed in 1955 has created a *de facto* classification of charities for the purpose of distributing a

benefit that is not rationally related to any legitimate governmental objective. This irrational classification, invoked to justify the differential treatment of potential Campaign participants, violates the equal protection clause. At the same time, the presumptive use, year after year, of specifically named entities, whether "United Funds," "Community Chests," and "United Appeals," or "the United Way," as proxies for the category of "those charities deserving of access" establishes an irrebuttable presumption violative of the due process clause. Exclusion of charities on the basis of an anachronistic legislative decree violates their first amendment rights and rights to equal protection; their *presumptive* exclusion, however, violates due process.

■ An irrebuttable presumption amounts to a violation of due process, unless it can withstand strict scrutiny, where a fundamental right is involved, or, when no fundamental right is involved, it is at least "rationally related to legitimate legislative objectives." *Malmed v. Thornburgh,* 621 F.2d 565, 575, 578 (3d Cir.), *cert. denied,* 449 U.S. 955, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980). *See, e.g., Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973) (unconstitutional to classify students permanently as non-residents based on address at time of application); *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (unconstitutional to presume that all unwed fathers are unfit as parents); *Cleveland Board of Ed. v. LaFleur,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974) (unconstitutional to require all teachers more than four months pregnant to take unpaid maternity leave); *Gurmankin v. Costanzo,* 556 F.2d 184 (3d Cir.1977), *cert. denied,* 450 U.S. 923, 101 S.Ct. 1375, 67 L.Ed.2d 352 (1981) (unconstitutional to presume blind teacher not competent to teach English in public schools). Here, assuming that the Legislature's intent was indeed to "facilitate[e] charitable giving to the broadest range of needs, while avoiding the overburdening of the payroll deduction system ..." (Defend-

ant's Brief at 20–1), the automatic inclusion of the United Way and exclusion of all others involves a presumption on the Legislature's part that the United Way, and the United Way alone, would always and most successfully fulfill the legislative goal. In light of the first amendment interests here, such a presumption must be able to withstand more than minimal scrutiny. Charities whose exclusion from the Annual Campaign is not "reasonable" under *Perry's* "forum purpose" test have a first amendment right to access for so long as the state continues to provide access to the United Way. Presumptive exclusion of these charities treads on a fundamental right. Yet not even the Governor purports to offer a rationale for the *presumptive* exclusion of all charities other than the United Way. Under New Jersey Statute Annotated 52:14–15.9c, other charities are denied even the opportunity to demonstrate that they are entitled to access under the first amendment. Even applying the minimal rationality test, the presumption stands out as a glaringly irrational means of furthering any legitimate state interest.

The Governor, in his brief, focuses continually on the substantive merits of favoring the United Way: the favoritism is, he argues, "a rational decision to expend limited state resources to encourage charitable giving which would benefit the broadest spectrum of public interest." (Defendant's Brief at 23). If this is the state's interest, then the presumptive exclusion of all charities but the United Way is not a rational means of furthering that interest. Conclusively presuming that the United Way alone can fulfill this objective deprives the state of the benefit of being able to weigh and consider a range of charities each year to determine which one, or which collection of charities, *in fact* will best further the state's interest. The only conceivable interest the state could have in depriving itself of the opportunity to reexamine each year the degree to which each applicant charity might further its interest is the administrative "convenience" and relatively low "cost" of invoking the presumption.[3]

---

**3.** This is in direct contrast to cases like *Malmed v. Thornburgh,* 621 F.2d 565 (3d Cir.1980) (up-

Yet the "inconvenience" and "cost" of a periodic administrative evaluation of applicant charities is certainly *de minimis* in relation to the amount of state resources expended over the last thirty years for the Annual Campaign, not to mention the magnitude of the deprivation to those charities which have been unreasonably excluded as a result of the presumption. Undoubtedly, "[p]rocedure by presumption is always cheaper and easier than individualized determination," but where the presumption is not rationally related to the state's real interest, especially when fundamental rights are at stake, the presumption "cannot stand." *Stanley v. Illinois,* 405 U.S. at 656–57, 92 S.Ct. at 1215.

### d. As a Violation of the Overbreadth Doctrine

■ In the first amendment context, a statutory presumption which results in the denial of forum access to those deserving of access is unconstitutionally overbroad. *See Schaumburg v. Citizens for a Better Environment,* 444 U.S. at 635–39, 100 S.Ct. at 835–37 (ordinance which denied solicitation permits to charities using less than seventy-five per cent of receipts for charitable purposes was unconstitutionally overbroad); *also Sec. of State of Md. v. Munson,* —— U.S. ——, 104 S.Ct. 2839, 81 L.Ed.2d 786 (ordinance similar to that in *Schaumburg* not saved from facial attack on overbreadth grounds simply because it provided for "waiver" of per cent requirement for charities in financial hardship). New Jersey Statute Annotated 52:14–15.9c presumptively and impermissibly restricts protected speech, namely, participation in the Annual Campaign by charities whose current exclusion from the Campaign is not reasonable under *Perry.* In this case, as in *Munson,* the plaintiff need not establish that there is a substantial overbreadth because the statute restricts speech based on a "fundamentally mistaken premise." 104 S.Ct. at 2852. Rather than tailoring requirements for admission to the Annual

Campaign to the interests the state seeks to further in that Campaign, the statute, under the Governor's reading, presumptively admits only one charity without any ongoing examination of that lone charity's furtherance of the state's purpose. The fact that the statute may serve the state purpose at times is purely "fortuitous" since the statute is not designed in a way that will *ensure* that the purpose is served. *Cf. Munson,* at 2853 (fact that ordinance might separate fraudulent charities from legitimate ones was purely fortuitous since there was no rational connection between amount charity spent in fund raising and its legitimacy).

The offensive overbreadth inherent in the Governor's interpretation of the statute not only further indicates that the plaintiff cannot but prevail ultimately on the merits, it also supports the court's decision not to abstain. Part of the constitutional offense in an overbroad statute is that it tends to chill the exercise of protected speech. *Munson,* 104 S.Ct. at 2853. Here, the Governor's rigid invocation of the statute to exclude all charities but the United Way could well lead potential participants with a first amendment right of access to the Annual Campaign to believe there was no reason for them to apply because they would be automatically excluded. Where an overbroad statute capable of chilling protected speech is the subject of a constitutional challenge, abstention is not appropriate. *Baggett v. Bullitt,* 377 U.S. at 379, 84 S.Ct. at 1326; *Zwickler v. Koota,* 389 U.S. at 250–52, 88 S.Ct. at 396–97.

### 5. *The Plaintiff's Interpretation—Selective Exclusion of the BUF/NJ*

New Jersey Statute Annotated 52:14–15.-9c is equally unconstitutional under the second interpretation offered by the parties. The plaintiff contends that the statute contemplates the admission of charities falling within one of the generic categories listed, whether a "united fund," a "commu-

---

holding mandatory retirement age of seventy years for state judges as rationally based), in which the *presumption itself* can be said to fulfill a substantive state interest. The court can

discern no substantive state interest in New Jersey's conclusive presumption against considering charities other than the United Way for participation in the Annual Campaign.

nity chest," or a "united appeals." It argues that its exclusion from the Annual Campaign was an arbitrary and capricious application of the statute to it, because the exclusion was effected without reference to any legislative standards for exclusion, any fact finding, or any, even informal, "process." This court agrees. Moreover, the court finds that the constitutional defect rests not only in the application of the statute to the BUF/NJ, but in the statute itself. The statute is defective on its face because it vests in a single administrative official, the state Treasurer, complete discretion as to the allowance or disallowance of charitable contributions by payroll deduction, without any guidelines, standards, or articulated policies by which the exercise of discretion may be guided and judged.

a. As an Unconstitutional Delegation of Discretion to an Administrative Official

It is well settled law that a state legislature may not vest in an administrative official or governmental authority the unfettered discretion to grant or withhold permission to exercise first amendment rights. *See, e.g., Lovell v. Griffin,* 303 U.S. 444, 451, 58 S.Ct. 666, 668, 82 L.Ed. 949 (1938); *Thornhill v. Alabama,* 310 U.S. 88, 97, 60 S.Ct. 736, 741, 84 L.Ed. 1093 (1939); *Cox v. Louisiana,* 379 U.S. 536, 557–58 (1965); *Shuttlesworth v. Birmingham,* 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1968); *Sec. of State of Md. v. Munson,* — U.S. —, 104 S.Ct. 2839, 2851 n. 12, 81 L.Ed.2d 786 (1984). A statute regulating speech must include reasonably clear guidelines so as to prevent official arbitrariness or discrimination in its enforcement. *Smith v. Goguen,* 415 U.S. 566, 573, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605 (1974). Failure to include such guidelines is to invite "covert forms of discrimination." *Heffron v. Int'l Society for Krishna Consciousness,* 452 U.S. 640, 649, 101 S.Ct. 2559, 2565, 69 L.Ed.2d 298 (1980), citing *Shuttlesworth, Cox.*

Unless a statute *itself* prescribes "definitive standards or other controlling guides governing the action of the [administrators applying it]," it is invalid on its face. *Staub v. City of Baxley,* 355 U.S. 313, 322, 325, 78 S.Ct. 277, 282, 284, 2 L.Ed.2d 302 (1955). Indeed,

proof of an abuse of power in the particular case has never been deemed a requisite for attack on the constitutionality of a statute purporting to license the dissemination of ideas ... [cases omitted].... The cases when interpreted in the light of their facts indicate that the rule is not based on any assumption that application for the license would be refused or would result in the imposition of other unlawful regulations.... It is not merely the sporadic abuse of power by the censor but the pervasive threat inherent in its very existence that constitutes the danger to freedom of discussion.

*Thornhill v. Alabama,* 310 U.S. at 97, 60 S.Ct. at 741. Because New Jersey Statute Annotated 52:14–15.9c vests in one administrative official complete, unfettered discretion to allow or deny the solicitation of contributions by payroll deduction among state employees, without reference to any standard, purpose, or policy, the statute itself must fall.

The fact that the discretion authorized in New Jersey Statute Annotated 52:14–15.9c is to be exercised in *granting* access to a nonpublic forum, rather than in *restricting* access to a public forum, is not constitutionally significant. Of course, the state has no constitutional obligation to open the payroll deduction system to charities in the first instance, as it has no obligation to subsidize the exercise of speech by charities. *See, e.g., Regan v. Taxation Without Representation,* 461 U.S. 540, 103 S.Ct. 1997, 76 L.Ed.2d 129 (1983). Nonetheless, once the state chooses to open the payroll deduction system to certain categories of charities, as the BUF/NJ argues it has done, the state may not authorize its officials to select arbitrarily among potentially eligible charities any more than it may authorize an official to restrict speech directly in an arbitrary fashion. *See Elrod v. Burns,* 427 U.S. 347, 359, 96 S.Ct. 2673, 2682, 49 L.Ed.2d 547 (1976) (denial of a public benefit may not be used by the government to achieve what it may not

command directly); *Maher v. Roe*, 432 U.S. 464, 470, 97 S.Ct. 2376, 2380, 53 L.Ed.2d 484 (1976) ("the manner in which [the state] dispenses benefits is subject to constitutional limitations"); *see also Sherrill v. Knight*, 569 F.2d 124 (D.C.Cir.1977) (Secret Service's denial of access to nonpublic White House press facilities violated first and fourteenth amendments where Secret Service refused to make known the "actual standard" employed in the denial or to afford the denied reporter any procedural protections). The Legislature can, of course, make a decision to favor one group with benefits while denying benefits to others *if* the distinction meets constitutional *minima. See Maher v. Roe*, 432 U.S. 464, 97 S.Ct. 2376, 53 L.Ed.2d 484. But, the Legislature cannot make such a distinction arbitrarily. *Zobel*, 457 U.S. 55, 102 S.Ct. 2309, 72 L.Ed.2d 672. It follows, then, that the Legislature cannot in any event delegate to an *official* the power to make the distinction arbitrarily. *Cf. Sherrill v. Knight*, 569 F.2d 124.[4]

New Jersey Statute Annotated 52:14–15.-9c is in essence a licensing statute like many others that have been struck down as posing too great a threat of censorship. *E.g., Staub v. Baxley*, 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302; *Cox v. Louisiana*, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471; *Shuttlesworth v. Birmingham*, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162. If the BUF/NJ were granted license to participate in the Annual Campaign, it would be able to exercise its speech rights; since it has not been, it cannot exercise those rights. It is immaterial under the first amendment whether a charity "is prevented from engaging in First Amendment activity by lack of a solicitation permit or by knowledge that its fund-raising is illegal [without such a permit]." *Munson*, 104 S.Ct. at 2854. Likewise, the question of

whether a discretionary licensing scheme involves access to a nonpublic forum or access to a public forum is not significant when the discretion to regulate access arbitrarily is placed in the hands of administrative officials. The fact that the Annual Campaign, with its payroll deduction mechanism, is a nonpublic forum only means that the state can regulate access in a way reasonably related to the purpose the forum serves. It, in no event, means that access can be restricted arbitrarily according to the personal predilections of administrators. *NAACP v. Devine*, 727 F.2d at 1264–65. Any statute which would authorize such restrictions is accordingly void.

b. As a Violation of Procedural Due Process

An interest "grounded in the First Amendment ... is ... a 'liberty' interest within the meaning of the Fourteenth Amendment...." *Procunier v. Martinez*, 416 U.S. 396, 418, 94 S.Ct. 1800, 1814, 40 L.Ed.2d 224 (1973). Decisionmaking which affects that interest "must be accompanied by minimum procedural safeguards." *Id.* at 417, 94 S.Ct. at 1814. New Jersey Statute Annotated 52:14–15.9c is invalid not merely because it does not set out a standard by which to guide the discretion of the Treasurer, but also because it does not provide for some sort of procedural mechanism for deciding how to apply the standard in individual cases.

CONCLUSION

The BUF/NJ has been attempting for two years to gain entrance to the Annual Campaign, or at least to be given permission to conduct its own one-time campaign. BUF/NJ officials have met with the Governor's staff a number of times. They have received only negative responses from the Governor, except for the suggestion that

---

**4.** Nor can the state delegate to a private individual the power to take actions the state itself does not have the power to take. *See Planned Parenthood of Missouri v. Danforth*, 428 U.S. 52, 69, 96 S.Ct. 2831, 2841, 49 L.Ed.2d 788 (1976) (state cannot delegate to spouse the power to veto a pregnant woman's choice to have an abortion in the first trimester of pregnancy since the state itself lacks such veto power). The United Way

has apparently been vested with completely unreviewed and unreviewable discretion to determine which specific individual charities will benefit from the Annual Campaign. Nowhere in the papers submitted by the Governor, nor at oral argument, was there any evidence that the state exercises any oversight as to the manner in which the United Way selects member charities.

they join in with the Governor's staff and other charities in drafting legislation that might meet the constitutional requisites of flexibility and specificity. The confusion, delay, and unreasonable rigidity that have surrounded the BUF/NJ's application for admission to the Annual Campaign resulted inevitably from the lack of standards in the statute authorizing payroll deductions. Quite conceivably, other potential applicants for admission to the Annual Campaign have been "chilled," or deterred, from any pursuit of admission by the absence of published standards and procedures for admission. In such circumstances, this court is not required to abstain from finding a constitutional violation, which would only prolong further the harmful effects of the violation. The court accordingly declines to abstain and concludes that there is a substantial likelihood that plaintiff will prevail and accordingly that preliminary relief is warranted for the reasons expressed above.

The state purpose involved here is to open the doors for the limited and commendable purpose of aiding charities in their search and need for funds. Recognizing without hesitation that such access must be limited, other charities are entitled to know the standards for inclusion and to have the right to comply with or challenge those standards. In their absence, plaintiff and others are denied equal access without knowing the basis for same.

Plaintiff's free speech rights have been impinged. There may be a rational and reasonable basis for denying the plaintiff access to state offices, but it cannot be one shrouded in secrecy and not susceptible to compliance or challenge. Before the denial of such a fundamental right takes place, the reasons and basis for same should be the subject of established and disclosed standards. Plaintiff should not be denied its rights of free speech for reasons it does not know and cannot discover.

Despite its conclusion in this matter, the court does not wish to interfere with the present on-going campaign and deprive both employees and the affected charities of making and receiving contributions predicated upon a long-standing practice and interpretation of the existing statute. Therefore, the injunction ordered herein shall be stayed for a period of forty-five days so as to afford the state time to enact new legislation incorporating the constitutional considerations enumerated above or to appeal from this decision.

## ORDER

This matter having been opened to the court upon filing of a complaint seeking a preliminary injunction and upon an order to show cause entered by the court on August 31, 1984; and defendant having filed a cross-motion for abstention and stay of this action; and the court having read and considered the allegations of the complaint, and the briefs and affidavits and supporting materials submitted, and having heard argument in open court; and for good cause shown; and the reasons expressed by the court in its written opinion filed this day;

It is on this 3rd day of October 1984 ORDERED:

That plaintiff's motion for preliminary relief is granted and the Governor, his agents, servants and employees, are hereby enjoined and restrained from conducting or permitting any solicitation of state employees pursuant to New Jersey Statute Annotated 52:14–15.9c or otherwise enforcing or acting upon New Jersey Statute Annotated 52:14–15.9c; and it is further ORDERED

That defendant's motion to abstain is hereby denied; and it is further ORDERED

That the provisions of this order granting preliminary relief are hereby stayed for a period of forty-five days from the date of entry of this order.