Sixta L. OROZCO by her next friend
Margarita ARROYO, Plaintiff,

v.

Thomas SOBOL, Individually and as Commissioner of the New York State Department of Education; and Mount Vernon Board of Education; and Dr. William C. Prattella, Individually and as Superintendent of Schools for the City School District of the City of Mount Vernon; and Joseph Williams, Individually and as Attendance Officer of the City School District of the City of Mount Vernon; and Yonkers Board of Education, Dr. Donald Batista, Individually and as Superintendent of the City School District of the City of Yonkers; and Jerry Frank, Individually and as Court Liaison Officer of the City School District of the City of Yonkers, Defendants.

No. 87 Civ. 6822 (GLG).

United States District Court,
S.D. New York.

Jan. 19, 1989.

**1114**

Westchester Legal Services, Inc., White Plains, N.Y. (Gerald A. Norlander, Julie A. Mills, of counsel), for plaintiff.

Robert Abrams, Atty. Gen. of State of N.Y., New York City (Stephen M. Jacoby, Asst. Atty. Gen., of counsel), for defendant Thomas Sobol, Comm'r.

D'Andrea & Goldstein, Mount Vernon, N.Y. (Vincent P. D'Andrea, of counsel), for defendants Mount Vernon Bd. of Educ., Dr. William C. Prattella and Joseph Williams.

Anderson, Banks, Moore & Hollis, Yonkers, N.Y. (Lawrence W. Thomas, of counsel), for defendants Yonkers Bd. of Educ., Dr. Donald Batista and Jerry Frank.

## OPINION

GOETTEL, District Judge.

Public education in the State of New York, as in most States, is grounded upon a residency requirement. Under the New York Constitution, the State Legislature is empowered to "provide for the maintenance and support of a system of free common schools, wherein all the children of this state may be educated." N.Y. Const. art. XI, § 1. Consistent with that mandate, the State Legislature has provided that any "person over five and under twenty-one years of age who has not received a high school diploma is entitled to attend the public schools maintained in the district in which such person resides without the payment of tuition." N.Y.Educ.Law § 3202(1) (McKinney 1981). The Supreme Court has had little difficulty in upholding the constitutionality of residency requirements akin to the above, noting that such are rooted firmly in a State's substantial interest in assuring a quality public education for its residents. *Martinez v. Bynum,* 461 U.S. 321, 325–30, 103 S.Ct. 1838, 1840–44, 75 L.Ed.2d 879 (1983).

The tragic phenomenon of homelessness and the concomitant issues associated with educating homeless youth present atypical problems for this educational scheme since residency is not easily determined in such situations. The case at bar brings to the fore certain of those difficulties.[1]

## I. FACTS

Most of the pertinent facts in this case were detailed in our earlier decision concerning plaintiff's motion for a preliminary injunction. *Orozco v. Sobol,* 674 F.Supp. 125, 126–27 (S.D.N.Y.1987) (*"Orozco I"*). Plaintiff, six years old at the commencement of this suit, and her mother, Margarita Arroyo, left Puerto Rico in May of 1987 for family reasons. They arrived in New York, and spent the night of their arrival with friends in Mount Vernon. It appears that Ms. Arroyo lived in Mount Vernon at two prior periods in her life—from some time in 1975 until some time in 1977, and from April 1981 until November 1985. Plaintiff, who was born in Puerto Rico on November 29, 1980, lived with her mother in Mount Vernon during the latter period but was too young to attend public school.[2]

On the day following their latest arrival in New York, Ms. Arroyo applied for and received public assistance from the West-

---

1. Our use of the term "homeless" encompasses those individuals, including plaintiff, who are provided temporary shelter through public assistance. *Orozco v. Sobol,* 674 F.Supp. 125, 126 n. 1 (S.D.N.Y.1987).

2. Plaintiff did attend school in Puerto Rico in the year prior to her departure from that U.S. territory.

chester County Department of Social Services. The family immediately was provided with emergency shelter at the Trade Winds Motel in Yonkers.

On September 9, 1987, Ms. Arroyo attempted to enroll her daughter in the Mount Vernon public schools (ostensibly in light of Ms. Arroyo's previous contacts there and professed desire to find permanent housing in that city). She was advised orally by Mount Vernon school officials that plaintiff could not be enrolled in that school system since Ms. Arroyo did not "reside" in Mount Vernon. Ms. Arroyo then attempted, on September 10, to enroll plaintiff in the Yonkers school system. Yonkers school officials orally advised Ms. Arroyo that plaintiff was ineligible to attend school in Yonkers since the family did not "reside" in that city. No hearing was provided by either school district, nor was any notice provided Ms. Arroyo explaining the bases of the decisions and outlining avenues of appeal. Those appellate rights include a direct appeal to the Commissioner of Education pursuant to N.Y.Educ.Law § 310 (McKinney 1969 & Supp.1987) ("section 310"). At no time prior to or since initiation of this action has plaintiff pursued a section 310 appeal.

School opened in both the Mount Vernon and Yonkers school districts on September 10, 1987. On September 22, plaintiff, through her mother and by her attorneys (the Westchester Legal Services, Inc.) instituted this action pursuant to 42 U.S.C. § 1983 contending that she was denied her right to a public education in New York without being afforded the protections accorded by due process. Each of the above school districts (and certain of their officials) and the State Commissioner of Education were named as defendants. Specifically, the complaint alleges: (i) that the actions of the local school districts violated the Due Process Clause of the Fourteenth Amendment by failing to provide plaintiff with notice and hearing regarding their respective decisions denying plaintiff admission to school; (ii) that the Commissioner of Education, who has general supervisory authority over New York's public school system under N.Y.Educ.Law § 305(1) & (2) (McKinney 1988), knew that local school districts had a pattern and practice of denying homeless children admission into their schools without any modicum of procedural protections and that his failure to rectify this situation violated due process; and (iii) that the section 310 appeals procedure is too slow and burdensome to satisfy due process.[3] Plaintiff seeks declaratory and injunctive relief, as well as damages for the alleged constitutional violations. Attorney's fees also are sought pursuant to 42 U.S.C. § 1988.

On November 30, we granted plaintiff a preliminary injunction requiring that she be admitted to the Yonkers school district so long as her then-existing living conditions continued to obtain (i.e., that she and her family continued to be sheltered in Yonkers). *Orozco I*, 674 F.Supp. at 131.[4] We declined, however, to grant any injunctive relief against the State, noting that we had grave doubts as to plaintiff's ability to pursue her claims against the Commissioner. *Id.* at 131–32 & n. 8. Moreover, the injunction against Yonkers protected plaintiff from further harm pending a decision on the merits, further militating against the need to impose a preliminary remedy against the State. *Id.* at 132, 133.

Since that decision, two important events have occurred. First, with their family problems at least temporarily resolved, plaintiff and her mother returned to Puerto Rico on March 5, 1988, voluntarily withdrawing from the Yonkers school system.

Second, the New York Board of Regents, at its meeting on May 19 and 20 of this year, approved new regulations governing the placement of homeless children in New

---

**3.** The original complaint also included a challenge under the Equal Protection Clause, but that claim was abandoned in a subsequent amended complaint.

**4.** On September 24, we granted a temporary restraining order to this affect, which order was extended by consent of the parties until decision was rendered on the motion for a preliminary injunction. *Orozco I,* 674 F.Supp. at 127.

York public schools.[5] Those regulations effect two important changes in New York's educational scheme. First, the parent or guardian of a homeless child is allowed, *inter alia*, to designate one of two school districts as the appropriate educational placement for the child: either the district in which the family currently is sheltered or, if applicable, the district in which the child last attended or would have attended public school. N.Y.Comp.Codes R. & Regs. tit. 8, § 100.2(x) (1988). Second, the regulations specifically direct local school boards to determine, in the first instance, whether a child is a resident of that district. Any decision holding that a child is not entitled to attend the schools of the district must be preceded by a hearing and accompanied by notice outlining the bases of the decision and avenues of appeal (i.e., the section 310 appellate process). *Id.* at § 100.2(y).

Motivated in part by these changed circumstances, the defendants now move to dismiss this action on the merits or as moot. Alternatively, the defendants urge that we abstain from deciding the constitutional issues presented.

## II. DISCUSSION

### (a) Mootness

■ The mootness doctrine is rooted in the premise that the Federal judiciary, consistent with its obligations under Article III of the Constitution, may only adjudicate "actual" or "live" controversies. *Honig v. Doe*, 484 U.S. 305, 108 S.Ct. 592, 601 & n. 5, 98 L.Ed.2d 686 (1988). The fact that plaintiff has now returned with her mother to Puerto Rico suggests that she no longer retains the requisite "personal stake" in the outcome of the litigation, thereby rendering moot her claims for declaratory and injunctive relief. *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396–

97, 100 S.Ct. 1202, 1208–09, 63 L.Ed.2d 479 (1980).

Plaintiff contends, however, that this action falls within the well-recognized "capable of repetition, yet evading review" exception to the mootness doctrine. We disagree. The Supreme Court has noted that

in the absence of a class action, the "capable of repetition, yet evading review" doctrine [is] limited to the situation where two elements combine[ ]: (1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again.

*Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 348–49, 46 L.Ed.2d 350 (1975), *quoted with approval in Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982). There can be no doubt that the second prong of this test cannot be satisfied here.

The parties focus to a considerable degree on whether a reasonable expectation exists that plaintiff, now in Puerto Rico, will return to New York as a homeless child.[6] Even assuming plaintiff's return, however, the adoption by the Board of Regents of new regulations governing the educational placement of homeless children ensures that plaintiff will not be "subjected to the *same action* again." *Bradford*, 423 U.S. at 149, 96 S.Ct. at 349 (emphasis added). Although plaintiff may have standing in the future to challenge the new regulations, that challenge would not be the same as the action presented here, viz, that the former scheme was violative of due process. Consequently, plaintiff's demands for injunctive and declaratory relief are moot.

That the central claims in this case are moot, however, does not end our inquiry. Plaintiff also seeks damages (both compen-

---

5. The Board of Regents is the body in charge of the State's public educational system, and the Commissioner of Education serves as the Board's chief administrative officer. N.Y. Educ.Law § 101 (McKinney 1988).

6. Given the past history of this family, and the obvious attraction to New York as this country's welfare mecca, it would be hard to rule that out as a possibility. Indeed, we understand that New York public assistance pays for certain of the plane trips to and fro in cases similar to that at bar.

satory and punitive) for the time during which she was denied admission, allegedly in violation of due process, to a New York public school.[7] Plaintiff correctly notes that a claim for damages remains viable even though claims for injunctive or declaratory relief are deemed moot. *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 1950–51, 23 L.Ed.2d 491 (1969). In the case at bar, of course, plaintiff is entitled to nominal damages if she can demonstrate a constitutional violation. *Carey v. Piphus*, 435 U.S. 247, 266, 98 S.Ct. 1042, 1053–54, 55 L.Ed.2d 252 (1978).[8] The Second Circuit has noted that "[t]he availability of either nominal or substantial damages is sufficient to prevent [a] case from becoming moot." *Davis v. Village Park II Realty Co.*, 578 F.2d 461, 463 (2d Cir.1978), *cited with approval in Ellis v. Blum*, 643 F.2d 68, 83 (2d Cir.1981). Thus, although the core of this action is moot, plaintiff's damage claims prevent this court from dismissing the case in its entirety. Moreover, to apportion damages in this case, *no matter how minimal*, we will by necessity have to decide the due process question. *Ellis*, 643 F.2d at 84. We think this to be a most undesirable state of affairs since the case touches on matters of uniquely local concern yet it no longer "directly and sharply implicates basic constitutional values." *Epperson v. Arkansas*, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968). *See also* Stewart B. McKinney Homeless Assistance Act § 722(e), 42 U.S.C. § 11432(e) (directing States, and not the Federal courts, to shape educational policy for the homeless, an instruction New York has been quick to follow through on via adoption of the new regulations). One might have thought that a case touching on such sensitive concerns would have to be comprised of sterner stuff than the mere possibility of nominal damages, but such is the Alice in Wonderland-like state of the law as we find it.[9]

### (b) Dismissal of claims and/or parties

#### 1. The State defendants

Plaintiff's claim that the section 310 appeals process is too burdensome to satisfy due process must be dismissed on either of two alternative grounds: ripeness or standing. We suggested in our earlier decision

7. The time in issue is ten days. Both the Yonkers and Mount Vernon school districts began their 1987–88 academic years on September 10, 1987. This court granted a temporary restraining order directing plaintiff's admission to the Yonkers school system on September 24. Subtracting the four weekend days during that two-week period in which plaintiff was not in school leaves ten days in which she allegedly suffered emotional distress and other injury due to her circumstance.

8. Of course, she is also entitled to prove actual damages, such as emotional distress (which are claimed in this case, although calculating such damages may give new meaning to the terminology "imprecise science"). *Carey*, 435 U.S. at 263–64, 98 S.Ct. at 1052–53. Further, plaintiff is entitled to attorney's fees (also requested here) so long as she is able to secure at least nominal damages. 42 U.S.C. § 1988.

9. We hasten to emphasize that since institution of this lawsuit, regulations governing the educational placement of the homeless have been adopted. Had those regulations been in place when this suit was initiated, there would have been no suit, or else it would be those regulations—crafted and put in place by officials whose job it is to administer the state education system—that would be challenged. If no regulations existed at this time, we would be left with the scenario outlined in our earlier decision—we simply would be unable to sit idly by while constitutionally protected rights "were being sucked up in the vacuum of legislative and regulatory dereliction." *Orozco I*, 674 F.Supp. at 130.

Neither situation, however, now exists. Instead, we have a plaintiff who has achieved much of her substantive goals (or, if not *her* goals, the goals of her attorneys)—plaintiff was admitted to school immediately by order of this court and, in the meantime, the State has adopted regulations addressing the situation about which plaintiff complains. All that remains is in the name of damages which, if not *de minimis*, most assuredly will be *minimal*. Based on first-hand experience, the court can confidently say that children of plaintiff's age are often absent from school for periods of time comparable to the time at issue here (10 days)—for reasons and circumstances both real and imagined. *See Harrison v. Sobol*, slip op. at 14, 705 F.Supp. 870 (S.D.N.Y.1988) (Brieant, C.J.) (awarding plaintiffs $1.00 in nominal damages due to their four- or five-day displacement from school under conditions similar to those at bar, noting that "[t]here is no proof of actual damage flowing from an absence from school no longer than that which often flows from the common cold").

that this claim might fail for either of these reasons (due to plaintiff's failure to seek a section 310 appeal), *Orozco I*, 674 F.Supp. at 131 & n. 8, and we now dismiss the section 310 claim for the reasons stated therein.[10]

■ In addition, as indicated *supra*, we are left now only with a claim for damages in this case. The Eleventh Amendment, of course, insulates the Commissioner of Education, in his official capacity, from pecuniary liability in Federal court. *Quern v. Jordan*, 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979). Consequently, the Commissioner, in his official capacity, is dismissed as a party to this suit.

■ As to his individual capacity, the Commissioner is entitled to qualified immunity "insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The remaining claim against the Commissioner is that, as supervisor of the State's public educational system, he "knew or reasonably should have known that school districts under his supervision have a pattern or practice of summarily denying admission to pupils determined to be nonresidents ... [and that the] Commissioner has condoned or ratified the pattern or practice of the local school districts to deny school admission summarily...." Second Amended Complaint ¶ 44, at 15–16. *See Duchesne v. Sugarman*, 566 F.2d 817, 830–32 (2d Cir. 1977) (holding supervisory officials may be held liable if they affirmatively promote

unconstitutional policy which was "causally connected" to plaintiff's injury).[11]

If local school districts had a practice of summarily denying continued education to students already enrolled in their schools, then we have little doubt that this would constitute a violation of due process. *See Goss v. Lopez*, 419 U.S. 565, 574, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975) (school suspensions of enrolled students may be effected only within the confines of due process); *Orozco I*, 674 F.Supp. at 130–131 & n. 6 (discussing *Takeall v. Ambach*, 609 F.Supp. 81 (S.D.N.Y.1985), and noting that when a child is already within a school district's control and is subsequently denied continued admission without notice and hearing, such conduct violates due process). That is not the situation before us, however. We are presented with a homeless child—who was not then enrolled in a New York school and whose residency for school purposes is a matter of great dispute—who was seeking and was summarily denied admission.

Indeed, although this case is framed within the context of procedural due process, the issue is more one of *placement* than it is of *process*—i.e., defining how a timely and fair determination of plaintiff's residence can be made so as to allow her placement in the proper public school. To be sure, this question embraces certain Fourteenth Amendment concerns. Whatever means are chosen, they must comport with the root requirements of due process (notice and hearing) since plaintiff has a constitutionally cognizable property interest in a New York public education. *Orozco I*, 674 F.Supp. at 128–29. It does not

10. There is a further argument, it seems to us, that comes into play here. Had regulations akin to the new regulations been in place which provided local school districts with guidance on how to deal with these situations, the need to resort to the section 310 appeal process may have been obviated in all but the most intransigent of cases. No such argument is made by plaintiff. Her attorneys focus solely on procedural due process (or the lack thereof), and we are not sure that such an argument can be made within the confines of *that* constitutional mandate. Regulations governing the kind of straightforward situation presented here should not have been difficult to draft and, as a matter

of public policy, were in desperate need. *Orozco I*, 674 F.Supp. at 133 n. 11. Whether such regulations were required by *procedural* due process, however, is a matter we do not pass upon as it is not before us.

11. We note that it is the Board of Regents, and not the Commissioner, which possesses rulemaking authority. N.Y.Educ.Law § 207 (McKinney 1988). It was suggested briefly in the papers on these motions that the Board's individual members are the proper defendants on this claim, but there is insufficient briefing to allow decision on that matter at this time.

necessarily follow, however, as plaintiff contends, that due process requires the local school districts to provide the hearing on residency matters.

For example, we doubt very much that the Bronxville school authorities would be required to hold a hearing before denying admission to an established resident of Yonkers who wished to attend what may be perceived as Bronxville's better schools. A contrary conclusion, it seems to us, invites not *due* process but a *waste* of process.

Likewise, as we opined in *Orozco I*, 674 F.Supp. at 129, not only do we believe a similar potential for wasteful process is extant here, but we think that local school boards are ill equipped to make residency determinations. Plaintiff was sheltered at the time in question in Yonkers, though her mother desired to find permanent residence in Mount Vernon—a desire over which, given her economic situation, she had little control. There was no need for a hearing to resolve factual disputes; all pertinent information was fairly known. *See Horton v. Marshall Public Schools*, 769 F.2d 1323, 1334 (8th Cir.1985) (holding imposition of hearing requirement on local schools impractical in that case since no factual disputes existed). Moreover, even assuming that plaintiff's characterization of the due process deficiency in this case is correct, we imagine Mount Vernon would have held a hearing and determined that the child belonged in Yonkers, and then Yonkers would have held a hearing and determined (not surprisingly) that the child belonged in Mount Vernon. What would have been accomplished by this meaningless exercise? It seems to us that, in clear contradistinction to the best interests of the child, a certain and perhaps lengthy period of time would have lapsed while these bureaucratic wheels were spinning in futility—time during which the child would not be in school receiving the education she needs and deserves. As we earlier emphasized, the best interests of the child occupy paramount importance in the court's mind as we con-

sider in this case whatever may have been required by due process. *Orozco I*, 674 F.Supp. at 126.

Other alternatives to hearing by the local school boards exist which, in our view, comport with procedural due process. For example, one such solution is embodied in the new regulations which allow a parent or guardian of a homeless child to choose that child's educational placement (i.e., define residence) from among specified options. N.Y.Comp.Codes R. & Regs. tit. 8, § 100.2(x) (1988). A second alternative, not suggested by any of the parties but envisioned by the court, would require that the Department of Social Services, upon sheltering a homeless family with school-aged children, notify the Commissioner of Education of this fact. The Commissioner would then immediately determine an appropriate educational placement for the children (who, after all, were placed in living accommodations at the State's expense and direction), and direct the appropriate school district to admit the children forthwith. If the school district objected to this placement, *it* (the school district) could then initiate a section 310 appeal, but the children would continue to be enrolled in school during that appeal.[12] Such a process would protect the best interests of the child and would have the added advantage of removing from the homeless family any burden of going forward with hearings, appeals, and the like to establish residency. *See Orozco I*, 674 F.Supp. at 129 (noting that "simple remedy, at least for this plaintiff, is a directive or ruling from the commissioner"). We don't doubt that such a process is subject to criticisms (and it may well be legally infirm), but such is the nature of the beast. Whatever process is defined in these cases will necessarily implicate "thorny policy choices." *Id.* at 130.

Moreover, and we underscore this point, the Commissioner's response is that a hearing *was* provided by the then-existing scheme—a section 310 hearing. A section 310 hearing arguably comports with the

---

**12.** Of course, if the homeless family objected to the placement, they could initiate a section 310    appeal as well.

requirements of procedural due process. This issue, however, will not be passed upon by this court for, as outlined *supra,* plaintiff's challenge to the sufficiency of the section 310 hearing has been dismissed due to her failure to utilize that option.[13]

The point of all this is that we cannot agree with plaintiff's counsel that plaintiff had a "clearly established" constitutional right to a hearing provided by the local school districts. We don't say that we preclude this outcome when we finally address the merits of this case, but just as certainly we cannot say that the Commissioner was supervising a scheme which, because it did not impose a local hearing requirement, was manifestly unconstitutional. Indeed, the dearth of case law directly on point and requiring hearing by local school districts underscores this conclusion.

Nonetheless, the root requirements of due process are hearing *and* notice, and it is the latter dictate which presents a more difficult hurdle for the Commissioner to clear. As we suggested in *Orozco I,* 674 F.Supp. at 130, although a section 310 hearing may comport with due process, the failure of the local school districts to provide notice outlining the availability of a section 310 hearing arguably constitutes a procedural defect in this case.

The Supreme Court repeatedly has emphasized that, in any proceeding which is to be accorded finality, due process mandates that notice reasonably calculated under the circumstances must be provided to the interested parties. That notice should, at a minimum, alert the parties to the opportunity of a hearing at which any objections to the contemplated action may be presented. *Peralta v. Heights Medical Ctr., Inc.,* —— U.S. ——, 108 S.Ct. 896, 899, 99 L.Ed.2d 75 (1988) (and cases cited therein). In a somewhat analogous context, for example, the Court held that public utilities, when notifying customers of a proposed termination of service, must "advise the customer of the availability of a procedure for protesting a proposed termination of utility service as unjustified." *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 15, 98 S.Ct. 1554, 1563, 56 L.Ed.2d 30 (1978).

Thus, although it may be said that local school districts need not hold hearings before advising prospective students that they do not meet New York's residency requirement, a sound argument can be made that such actions must at a minimum be accompanied by notice advising that the system provides for a hearing at which the prospective student's contrary concerns may be aired. The Commissioner's administration of a system which he knows does not provide that kind of notice at the local level presents a question going to the merits of this case. Consequently, his motion to be dismissed in his personal capacity on the basis of qualified immunity must be denied. *See especially Horton,* 769 F.2d at 1334 (holding that although initial hearing by local school district was impractical in that case since no factual disputes needed resolution, school was required to provide notice that a hearing was available should student wish to contest the action contem-

---

13. Although plaintiff (following the statute's lead) refers to the section 310 process as an "appeal," we think it could have constituted the "hearing" required in this case, with appellate review available in the courts. We recognize that due process generally requires a pre-deprivation hearing. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). That said, we don't think the "deprivation" in this case necessarily was defined at the time of the actions taken by the local school boards. Although plaintiff, as a recipient of New York public assistance, had a constitutional right to attend *a* New York public school, she had no right to attend the *Yonkers* or *Mount Vernon* public schools until her residency in one of those towns was established. *Orozco I,* 674 F.Supp. at 128–29. Thus, the reality was that the local school districts were not depriving plaintiff of her constitutional right to an education *per se;* they simply were saying that plaintiff had no right to attend their respective schools because she did not meet the residency requirement embodied in N.Y.Educ.Law § 3202(1) (McKinney 1981). That a timely and accessible section 310 hearing by the State would be the appropriate forum to resolve a residency dispute arising under that statute does not, it seems to us, inescapably run afoul of the Due Process Clause. *See Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed. 2d 484 (1972) (noting "due process is flexible and calls for such procedural protections as the particular situation demands").

plated).[14]

## 2. The school district defendants

There also remains the claim for damages against the Yonkers and Mount Vernon Boards of Education (and certain of their officials) based on their failure to provide plaintiff with notice and hearing. The school district defendants move to dismiss this remaining claim for failure to state a cause of action, contending that we held in *Orozco I* that the local school districts are not required by the Due Process Clause to provide notice and hearing in these situations. This conclusion misconstrues our earlier determination. In assessing whether a preliminary injunction should issue, we freely expressed our doubt as to the wisdom of imposing a constitutional hearing requirement on the local school districts, suggesting that it would solve little. *Orozco I*, 674 F.Supp. at 129. Obviously, today we have amplified upon our misgivings with that proposed "solution." We have never decided, however, in either our earlier decision or in our ruling today, the due process question. *See especially id.* at 130 ("Although we can not and need not say with certainty at this stage that a hearing is the constitutionally-mandated solution, nor do we need now resolve who has the initial responsibility for holding such a hearing, these certainly are sufficiently serious questions going to the merits, and the hardships tip so very decidedly in plaintiff's favor, that preliminary injunctive relief against one of the local school districts is warranted."). We add only, as noted *supra*, that there is a further question as to whether due process required the local school districts at a minimum to provide notice concerning the availability of a section 310 hearing.

These are issues which we decline to address dispositively without a full briefing of the issues and the various alternatives, all of which heretofore has not been provided. Indeed, a trial on the damages question may be required. Consequently, the motion to dismiss the remaining due process claim against the school district defendants is denied.

## (c) Abstention

■ Alternatively, the defendants ask that we abstain under either *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) or *Railroad Comm'n of Texas v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

As to *Burford* abstention, we think it inappropriate here when it is the constitutional sufficiency of the regulatory scheme in question that is at issue. This is solely a matter of federal constitutional law. *See especially Alliance of American Insurers v. Cuomo*, 854 F.2d 591, 601 (2d Cir.1988) (holding *Burford* abstention unwarranted in case involving due process attack on State's medical malpractice insurance scheme).

As to *Pullman*, the question is somewhat closer. Consistent with sound notions of federalism, it is well settled that a Federal court should defer in the first instance to a State tribunal when resolution of an unsettled question of state law may obviate or modify the federal constitutional question presented. *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 236, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984); *Zwickler v. Koota*, 389 U.S. 241, 248–49, 88 S.Ct. 391, 395–96, 19 L.Ed.2d 444 (1967). *Accord Alliance of American Insurers*, 854 F.2d at 601–02; *McRedmond v. Wilson*, 533 F.2d 757, 760 (2d Cir.1976). The state question, however, must be "*obviously susceptible* of a limiting construction." *Zwickler*, 389 U.S. at 251 n. 14, 88 S.Ct. at 397 n. 14 (emphasis added). Moreover, with its potential for seemingly interminable litigation, *Pullman* abstention is an extraordinary course to be pursued only in "special circumstances." *Lake Carriers' Ass'n v. MacMullen*, 406 U.S. 498, 509, 92 S.Ct. 1749, 1756, 32 L.Ed.2d 257 (1972).

The unclear question of state law in this case turns on an interpretation of the term "resides" as that term is used for educational placement. As we noted in *Orozco*

---

**14.** We hasten to add, however, that plaintiff's attorneys knew full well that a section 310 hearing was available and for their own strategic purposes chose not to initiate such a review.

**1122**

*I,* 674 F.Supp. at 129, plaintiff does not have an "unfettered right" to attend just *any* public school in New York. Rather, that right is bottomed on the residency requirement embodied in N.Y.Educ.Law § 3202(1) (McKinney 1981) ("section 3202") which, as noted *supra,* allows plaintiff, free of tuition, to attend only that public school "maintained in the district in which [she] *resides*" (emphasis added). In this case, where plaintiff "resides" and how that term should be construed when dealing with the homeless arguably bears on the due process question before us. Should a State court determine that the locus of the homeless child's shelter should operate presumptively as that child's place of residence for purposes of section 3202, *Orozco I,* 674 F.Supp. at 131, then the constitutional question presented arguably would be modified. Plaintiff in this case would no longer come to us as a homeless person, *per se,* but as a "resident" of Yonkers. It might be said that a resident denied admission to a local school has a clearer right to a *Goss-* or *Takeall*-like hearing at the local level than does one whose residence is a matter of dispute. This argument fails, however, for at least two reasons.

First, because residency determinations are inherently fact-specific, the term "resides" under section 3202 is not "obviously susceptible" of a definition that would provide a clear-cut rule in these type of cases. Second, and more importantly, whether or not plaintiff comes to us as a "resident" of a particular town or city for educational purposes really begs the more fundamental question. Whatever her residency may have been for these purposes, it was contested. Thus, we return to the fundamental question: "What type of hearing should be conducted, and by whom, in settling an inter-district dispute over establishing plaintiff's residency under N.Y.Educ.Law

§ 3202?" *Orozco I,* 674 F.Supp. at 129. Defining where plaintiff may be said to have resided does not obviate or modify that broader question.[15]

Consequently, we decline to abstain under the principles embodied in either *Burford* or *Pullman.*

### Conclusion

For all of the above reasons, defendants' motions to dismiss are granted in part and denied in part.

SO ORDERED.

---

15. We emphasize, of course, that the changed nature of this action modifies the above question of law to an important extent. Plaintiff's challenge to the section 310 hearing as too burdensome to satisfy due process has been dismissed. Thus, in determining whether damages are appropriate, we are content to confine ourselves to addressing whether, according to the dictates of due process: (1) hearing and/or notice by the local school districts was constitutionally required as part of a scheme to determine residency for purposes of section 3202, and (2) the Commissioner may be held liable for supervising a scheme which failed to require notice at the local level of the availability of a section 310 hearing.